### DIAMOND et al. v. CONNOLLY et al.

(Circuit Court of Appeals, Ninth Circuit.    May 6, 1918.)

No. 3100.

1. TRUSTS ⊂⊃179—TRUSTEES—DUTY OF.
    The rule that forbids one holding a trust relation from making use of private trust property should be strictly enforced.
2. TRUSTS ⊂⊃102(2)—DUTY OF ADMINISTRATOR.
    One appointed administrator is in equity a trustee for the heirs.
3. TRUSTS ⊂⊃371(3)—TRUSTEES—FRAUD—BILL OF COMPLAINT.
    A bill of complaint by those next of kin of an Idaho decedent, living in the United States, against the administrator, who had obtained distribution of the property to himself, etc., under Rev. Codes Idaho, § 5702, by false representations that he was the next of kin, held sufficient to charge a fraudulent breach of trust by the administrator.
4. JUDGMENT ⊂⊃690—CONCLUSIVENESS—PERSONS CONCLUDED.
    Decisions of the Idaho state court that complainants' mother, a non-resident foreigner, was entitled to no interest in the estate of an Idaho decedent, held not conclusive against the claim against the administrator of complainants, who were those next of kin resident in the United States, that the administrator had procured distribution of the estate to himself and others by false statements.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. TRUSTS ☞102(2)—DECREE OF DISTRIBUTION—EFFECT.

As an administrator cannot contract with himself individually as to the property of the estate, a decree of distribution in favor of the administrator, based on his false statement that he was next of kin, etc., *held*, in view of Rev. Codes Idaho, §§ 4831, 4834, 5626, 5627, 5666, a fraud upon those next of kin entitled to take, which could not profit the administrator.

6. TRUSTS ☞102(2)—FEDERAL COURTS—JURISDICTION.

While the federal court cannot nullify a decree of a state probate court, yet as a court of equity it may declare an administrator, who through fraud obtained a decree of distribution in his favor, a trustee, and deprive him of any benefit of such decree.

7. LIMITATION OF ACTIONS ☞100(7)—RUNNING OF STATUTE.

Complainants' eight-year delay in seeking relief against an administrator who fraudulently represented that he was next of kin, etc., *held*, in view of their efforts on behalf of their mother, etc., not to warrant denial of relief; the case falling within Rev. Codes Idaho, § 4054, subd. 4, requiring actions based on fraud to be commenced within three years, but providing that such actions shall not be deemed to have accrued until discovery of the fraud.

8. TRUSTS ☞365(5)—RELIEF—DENIAL—LACHES.

Complainants' eight-year delay in seeking relief against the administrator, who obtained an estate to which complainants were entitled as next of kin, *held*, in view of complainants' delay in ascertaining their rights, not to warrant denial of relief on the ground of laches.

9. EQUITY ☞84—LACHES—DENIAL OF RELIEF.

Where defendant was guilty of fraud, a court of equity should be reluctant to deny relief, merely on the ground of laches.

10. TRUSTS ☞366(3)—PROPER PARTIES.

Where an administrator, by a false and fraudulent statement that he and certain of his relatives were next of kin, obtained a decree of distribution in their favor, the sureties on the administrator's bond are proper parties to a suit to hold the administrator and other distributees as trustees, etc.

Appeal from the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

Bill by Celia Diamond, and others against Lawrence F. Connolly, administrator of the estate of John Corbett, deceased, and individually, and others. From a decree dismissing the bill of complaint, complainants appeal. Reversed and remanded, with directions.

Caleb Jones, of Spokane, Wash., for appellants.

C. W. Beale, of Wallace, Idaho, for appellees Connolly.

Ezra R. Whitla, of Cœur d'Alene, Idaho, for appellee McBurney.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Celia Diamond and William, her husband, and Bridget McGrail and John, her husband, appellants, all of Pennsylvania, sued Lawrence F. Connolly, individually and as administrator of the estate of John Corbett, deceased, and John J. Connolly and John E. McBurney, of Idaho. Plaintiffs claim to be the heirs of John Corbett, deceased, whose estate was distributed to Lawrence F., John J., and William Connolly and Ellen Udell. Plaintiffs charge

Lawrence F. Connolly, administrator of the estate, as their trustee, and John J. Connolly and John E. McBurney as sureties on the administrator's bond given by Lawrence F. Connolly, with liability to the limit of the penalty of the bond; they also charge Lawrence F. Connolly individually, and John J. Connolly, as distributees, to the extent of the estate received by each of them. Other distributees were not made parties, because not within the jurisdiction of the court. A fair statement of the more important allegations follows:

Celia and Bridget, who claim to be true and lawful heirs of John Corbett, are sisters, natives of Ireland and daughters of Austin and Bridget Madden, subjects of Great Britain and Ireland. John Corbett was a half-brother of their mother, Bridget Madden, and died in January, 1907, leaving an estate in Idaho. Lawrence F. Connolly applied for appointment as administrator of the estate, was duly appointed, and qualified by giving bond signed by John J. Connolly and John E. McBurney as sureties. In March, 1907, as administrator, Connolly filed an inventory and appraisement showing an estate, personal, valued at $21,356, now alleged to be grossly disproportionate to its real value.

When Lawrence Connolly petitioned the court in Idaho for letters of administration, he represented to the court that William Connolly, John Connolly, and himself were brothers, and that Ellen Udell was their sister, and that they were cousins of John Corbett, and were his heirs at law; Connolly knowing, however, that they were not the next of kin or his heirs at law, and having made the representations with intent to deceive the court and to defraud plaintiffs. On August 2, 1909, Connolly, as administrator, prayed for decree of distribution of the estate, falsely representing to the court that he, his brothers, and his sister were heirs at law of John Corbett, deceased; the representations having been made by Lawrence with the knowledge and assent of his brother and sister, and with intent to deceive the court and to defraud the plaintiffs as the heirs at law. On August 23, 1909, the court, acting upon the petition and by reason of the false representations, decreed distribution to Lawrence, William, John, and Ellen, in equal portions, and thereafter, on the 28th of June, 1912, as administrator, Connolly distributed the estate to himself and to his brothers and sister; each knowing that none of them was rightfully entitled to a share of the estate.

About May, 1910, after Lawrence, John, and William Connolly and their sister, Ellen, "had concealed or not made known the death of the said John Corbett, deceased, for a period of three years and three months from his relatives and next of kin in Ireland, and from his other relatives and next of kin in the United States," and about a year after the decree of distribution by the probate court, the death of John Corbett was first brought to the knowledge of the plaintiffs by neighbors who read of the same in a newspaper. Plaintiffs, who were unable to read and write, at once had a friend write to their mother of the death of their uncle, John Corbett, and they believed, by advice of counsel whom they believed, that their mother was the sole heir of John Corbett, and acted in that belief until about August, 1916, when they went to Idaho and were told by Caleb Jones, an attorney

at law of Spokane, Wash., that they, plaintiffs, were the heirs of John Corbett in their own right and independent of the right of their mother.

Lawrence Connolly, while administrator, went to Ireland and by fraud and misrepresentation as to the value of the estate procured an assignment, dated April 1, 1911, to himself of all the interest of Bridget Madden, then 85 years old, an illiterate woman of failing understanding, in the estate of John Corbett. Thereafter, in 1912, in behalf of Bridget Madden, suit was instituted in the state courts in Idaho to establish her right to succeed to the estate of John Corbett, deceased; but the Supreme Court of the state determined that Bridget never had any interest or right in the estate. Connolly v. Reed, 22 Idaho, 29, 125 Pac. 213. Thereafter the Attorney General of Idaho, with counsel looking after the interests of Bridget Madden, brought suit to have the estate of John Corbett escheated to the state; but the Supreme Court of the state held adversely to the contentions of the Attorney General and of counsel for Bridget Madden. Connolly v. Probate Court, 25 Idaho, 35, 136 Pac. 205.

Plaintiffs allege that they did all in their power to further the interests of their mother, and pending litigation were informed by a number of attorneys, whom they confided in, that their mother was the sole heir of John Corbett, deceased, and that they would have no direct interest in his estate until her death. Bridget Madden, the mother, died in Ireland on August 26, 1914, but shortly before her death plaintiffs learned that the courts of Idaho had denied her claim to interest in the estate of John Corbett, and plaintiffs were then told that, inasmuch as their mother had been denied right in the estate, plaintiffs could have no right. Not until August, 1916, did they know of the disposition of the Corbett estate, or that they were the heirs of John Corbett, deceased. Thereafter they brought this action.

The District Court held that the allegations of fraud were insufficient; that by the statutes of Idaho the decree of the probate court became conclusive; that plaintiffs were guilty of laches, and were barred by the general statute of limitations. Plaintiffs appeal.

The suit in its main aspect is one seeking to charge Connolly, administrator, as a trustee for plaintiffs, and individually, as a distributee. The complaint makes a strong showing of plaintiffs' ignorance of their rights. From 1910, the time that they knew of Corbett's death, they were diligent in seeking advice and helping their mother, acting however, in the honestly mistaken belief that she was lawfully entitled to the estate of her half-brother, their uncle. Nor did they know that they themselves were his heirs until August, 1916. In the lifetime of the mother, earnest effort in her behalf was made to have the court recognize her claim that she was the only and sole surviving heir of John Corbett and rightfully entitled to the estate. In apparent good faith her claims were litigated until May, 1912, when the Supreme Court of Idaho, in Connolly v. Reed, 22 Idaho, 29, 125 Pac. 213, in an action by Lawrence F. Connolly et al. for writ of prohibition to Reed, as probate judge of Kootenai county, Idaho, held that under the Idaho laws of succession (Rev. Codes, §§ 5700–5715) the mother, Bridget, being a nonresident foreigner, could not take by succession, because she failed to initiate a claim within five years after the death of her

half-brother, and that even upon the assumption of fraud by Connolly in not having reported to the probate court that Bridget was the only surviving heir to the estate, and in not having advised her that her brother was dead and had left an estate which she was entitled to inherit, she was not prejudiced if she failed to appear and assert her rights within the definite statutory five-year period.

Later the same learned court, in October, 1913, in an application by Lawrence Connolly and others for writ of prohibition directed to the probate judge of Kootenai county to restrain consideration of a petition presented by the state of Idaho in the matter of the estate of Corbett, held that under the statutes of the state (sections 5715, 5716) it was not intended that the property of the deceased person should escheat to the state if he had any heirs who were entitled to succeed thereto, and that a nonresident foreigner could not, by failure to make application to succeed to such estate, deprive resident heirs of the right to succeed thereto. Connolly v. Probate Court, 25 Idaho, 35, 136 Pac. 205. Inasmuch as under the statute of Idaho "heirs" means those next of kin, citizens and residents of the United States, entitled to succeed to the person who dies intestate, we pass the general question of appellants' right of succession as not seriously controverted.

[1] The first point for our attention is: What was the position which Connolly, administrator, occupied toward the estate and these plaintiffs? If his relationship was fiduciary, the principles of law which govern will not in our opinion support the decree; while if he were free to deal wth the plaintiffs as at arm's length, then there is little or no equity in the complaint, and it was properly dismissed. The doctrine of equity as applied by the Supreme Court calls for strict enforcement of the rule that forbids one holding a trust relation from making private use of trust property. Oliver v. Piatt, 3 How. 333, 11 L. Ed. 622; Stahl v. Stahl, 214 Ill. 131, 73 N. E. 319, 68 L. R. A. 617, 105 Am. St. Rep. 101, 2 Ann. Cas. 774.

[2-5] We are satisfied that, when Connolly was appointed administrator, he was in equity a trustee for heirs. His duty, therefore, was to protect the interests of his cestuis que trust. Michoud et al. v. Girod, 4 How. 503, 11 L. Ed. 1076; Johnson v. Waters, 111 U. S. 671, 4 Sup. Ct. 619, 28 L. Ed. 547. In the Appeal of O'Neil, 55 Conn. 409, 11 Atl. 857, the administratrix, a sister of the deceased and an heir, obtained an order of distribution of an estate and intentionally omitted the name of a distributee also a lawful heir. It was found that when the order was made the administratrix knew that appellant was living and was entitled to a share, and that the administratrix obtained the order of distribution by intentionally concealing such knowledge from the probate court, and upon these facts it was held that there was a breach of trust, and that the order of distribution was fraudulently obtained by the administratrix, for the manifest purpose of paying over to herself and the other named distributees the share of the estate that belonged to the appellant.

The averments of the present complaint as stated by us tell the court that Connolly informed the probate court in Idaho that he and his brothers and sisters were the cousins and heirs at law and next of

kin of the deceased, and therefore entitled to take under subdivision 5, section 5702, Revised Codes of Idaho, which provides for distribution as follows:

"If the decedent leave neither issue, husband, wife, father, mother, brother nor sister, the estate must go to the next of kin in equal degree," etc.

Our construction is that when the cousin set forth that he was an heir at law, well knowing that he was not, he meant that he was the next of kin resident in the United States, and, this being the averment, we think, when it is considered with the allegations as to the intent of Lawrence Connolly falsehood and deception are plainly charged. As administrator Connolly's duty was to see that those, and those only entitled to share in the estate, did so. The suppression of knowledge which he had was the withholding of the truth, and the motive, as set forth, was his greed of personal gain. Pomeroy's Equity Jurisprudence, § 1077. The decisions of the Supreme Court of Idaho, already cited, do not conflict with our view for in those cases, inasmuch as Bridget Madden had no interest in the subject-matter of the suits, no relationship of trust existed between her and the administrator.

It being our opinion that there was a trust relationship, it follows that Lawrence Connolly, administrator, could not make a contract with himself as an individual in respect to the property of the estate. On principle, therefore, he could not profit by a decree of distribution in favor of himself obtained by fraud. Section 5627 of the Idaho Revised Codes, providing what a decree of the probate court must contain, declares that the court must name the person and parts to which each shall be entitled, and that such person may demand and recover his respective shares from the administrator or any person having the same in possession, and that "such order or decree is conclusive as to the rights of heirs, * * * subject only to be reversed, set aside, or modified on appeal." By section 5666 the appeal must be taken within 60 days after the decree is entered. Section 4831 provides that appeal may be taken from a judgment or order of the probate court in probate matters granting letters of administration, against or in favor of setting apart property, settling an account of an administrator, refusing, allowing, or directing the distribution of an estate or the payment of a debt, claim, or distributive share. Section 4834 provides the method of taking the appeal and for giving of a notice and the service thereof on the administrator, and all other parties interested who appeared upon the motion or proceeding which the appellant desires to have reviewed, or upon their attorneys. Sixty days is the time within which the notice of appeal must be filed and served. Section 5626 provides that upon the final settlement of the accounts of the administrator, or at any subsequent time upon the application of the administrator or of any heir, the court must proceed to distribute the residue of the estate in the hands of the administrator among the persons who by law are entitled thereto, and by section 5627 the court must name the persons and the proportions or parts to which each shall be entitled. Under the statutes it was obligatory upon Connolly as administrator to apply to the court in his representative capacity, and

it is too plain for argument that his duty was to advise the court in absolute good faith of all the knowledge he possessed concerning the persons who under the law were entitled to the estate. Failure to do this, with the intent to profit by concealment when he had the knowledge, must be regarded as fraud sufficient to make the decree recovered by the administrator a fraud as against them.

[6] Having now concluded that the case is one of fraud by a trustee, may equity give relief to the cestuis que trust, or will they have to be dismissed upon the ground that the United States courts will not nullify the effect of the decree of the probate court in Idaho. The answer is that, although the federal court will not disturb the decree of the probate court by annulling or supervising the same, nevertheless as a court of equity it is open to hear the complaint of these appellants, and may deprive the defendants of the fruits of a fraudulent judgment obtained in a state court. In Arrowsmith v. Gleason, 129 U. S. 86, 9 Sup. Ct. 237, 32 L. Ed. 630, a decree was asked setting aside and vacating an order of sale made in the probate court of Ohio and all proceedings therein affecting plaintiff's title to certain lands, and declaring the same and the deeds executed by his pretended guardian to be void and of no effect. It was argued that the United States court had no jurisdiction to make a decree setting aside and vacating the orders of the probate court. But the Supreme Court said:

"If by this is meant only that the Circuit Court cannot by its orders act directly upon the probate court, or that the Circuit Court cannot compel or require the probate court to set aside or vacate its own orders, the position of the defendants could not be disputed; but it does not follow that the right of Harmening in his lifetime or of his heirs since his death, to hold these lands as against the plaintiff, cannot be questioned in a court of general equitable jurisdiction upon the ground of fraud. If the case made by the bill is clearly established by proof, it may be assumed that some state court, of superior jurisdiction and equity powers, and having before it all the parties interested, might afford the plaintiff relief of a substantial character. But whether that be so or not, it is difficult to perceive why the Circuit Court is not bound to give relief according to the recognized rules of equity, as administered in the courts of the United States. * * *"

After citing Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260, the court said that, while there are expressions apparently asserting a counter doctrine, the later decisions of the Supreme Court show that a federal court may, without controlling, supervising, or annulling the proceedings of state courts, give such relief in cases such as was then before it as is consistent with the principles of equity; that the court in such cases does not act as a court of review, nor inquire into any irregularities or errors of proceedings in another court, but will scrutinize the conduct of the parties, and, if it finds that they have been guilty of fraud in obtaining a judgment or decree, will deprive them of the benefit of it, and of any inequitable advantage which they have derived under it.

The latest decision of the Supreme Court upon the subject is Simon v. Southern Railway Co., 236 U. S. 117, 35 Sup. Ct. 255, 59 L. Ed. 492, which confirms the principle of the earlier decisions. We there-

fore are of the opinion that, this suit being one to declare the appellees the trustees of the property which they fraudulently obtained, jurisdiction is properly sought in the federal courts.

[7-9] We next inquire whether the cause of action was barred by the provisions of section 4052 or subdivision 4 of section 4054 of the Code of Civil Procedure of the Idaho Revised Codes, which provide that an action upon any contract obligation or liability founded upon an instrument in writing shall be commenced within five years, and that an action for relief on the ground of fraud or mistake should be commenced within three years, and that the cause of action in such case is not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake. The complaint shows that the letters of administration upon the estate of Corbett were issued to Connolly February 20, 1907; that decree of distribution was made August 23, 1909, and distribution was had on the 28th of June and the 3d of July, 1912. Again, we resort to the complaint for information, and find that, after the plaintiffs learned of the death of their uncle in May, 1910, they were laboring under the belief that she, their mother, was the sole heir of her brother. They knew of the mother's claims and suit to enforce them, and they believed that they had no personal interest in the estate of their uncle while their mother lived. Plaintiffs were illiterate people, and naturally confided in counsel whose advice they sought. Their mistake was very natural under the circumstances. The mother died in August, 1914, but plaintiffs were again told that they had no right in the estate of Corbett, because the Supreme Court of the state of Idaho had determined in two suits that their mother had no right, and that therefore they could have no right; and not until 1916, after continued investigation, with the aid of counsel, did they learn that they were the heirs entitled to inherit the estate of their uncle, but that the estate was no longer under the control of the court, and by the fraud practiced upon the probate court had been distributed to Connolly and his brothers and sister. Plaintiffs without delay employed counsel to proceed, and, although advised that they could not recover, they persisted, and in March, 1917, after demand, commenced this suit. Plaintiffs, in our opinion, have shown sufficient reasons for their mistake, and for not having made an earlier discovery of the fraud that had been practiced upon them. Michoud v. Girod, 4 How. 561, 11 L. Ed. 1076; Pomeroy's Equity, § 847; Stearns' Adm'rs v. Page, 7 How. 819, 12 L. Ed. 928.

What has been said applies also to the question of laches. Under the allegations of the complaint a court of equity should be reluctant to deny relief merely upon the ground of laches. Bryan v. Kales, 134 U. S. 126, 10 Sup. Ct. 435, 33 L. Ed. 829.

[10] That the sureties of the administrator are proper parties to the suit is laid down in Payne v. Hook, supra, where it was held that a court of equity, having power to determine the liability of the administrator for his misconduct, may, in order to do complete justice, bring before the court sureties, parties in interest, in case the administrator should fail to pay.

251 F.—16

In view of the conclusions which we have reached, we think that the District Court should allow the proposed amendment offered by the plaintiffs to their complaint. It somewhat more clearly presents the facts upon which plaintiffs rely. The decree of the District Court is reversed, and the cause is remanded, with directions to overrule the order dismissing the complaint, and to require defendants to answer.

Reversed.