### DIAMOND et al. v. CONNOLLY et al.

(Circuit Court of Appeals, Ninth Circuit. October 3, 1921.)

No. 3662.

1. **Wills ⬅111(2)—Instrument held inadmissible as testamentary disposition.**

A written instrument, purporting to be a contract by which one party, for a consideration named, agreed that on his death his estate should go in equal parts to the other parties, the instrument consisting of two pieces of paper glued together, on one of which was the body of the contract, and on the other the signatures and date line, in different colored type from the body, *held* inadmissible in evidence as a testamentary disposition of the property of the promisor, after his death, in the absence of convincing proof that it was in the same condition when signed.

2. **Descent and distribution ⬅84—Administrator, procuring distribution to himself and others, held chargeable with fraud.**

Defendant, as administrator, procured an order for distribution of the estate to himself and his brothers and sister, who were cousins of decedent, as the heirs at law. Before making actual distribution, he went to Ireland and for a fraction of its value obtained a conveyance of her interest in the estate from a half-sister of decedent, who was old and illiterate, and who, under Rev. Codes Idaho, §§ 5702, 5715, was entitled to the entire estate, provided she claimed it within five years after decedent's death. After expiration of the five years defendant distributed the estate in accordance with the decree. *Held*, that he was chargeable with fraud against complainants, children of the half-sister, who as next of kin became the heirs at law and entitled to the estate on failure of their mother to claim it within the five years, and for whom defendant was trustee.

Appeal from the District Court of the United States for the Northern Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit in equity by Celia Diamond, William Diamond, Bridget McGrail, and John McGrail against Lawrence F. Connolly, administrator of the estate of John Corbett, deceased, and others. Decree for defendants, and complainants appeal. Reversed.

For prior opinion, see 251 Fed. 234, 163 C. C. A. 390. Certiorari denied 256 U. S. ——, 42 Sup. Ct. 169, 66 L. Ed. ——.

The appellants Celia Diamond and Bridget McGrail, with their respective husbands, by their original bill in this case sued the appellee Lawrence F. Connolly, as administrator of the estate of John Corbett, deceased, and

Lawrence F. Connolly individually, and John J. Connolly and John E.. McBurney—the latter two as sureties on the bond of the administrator —and in the bill alleged in substance that the complainants Celia and Bridget were the heirs of John Corbett, deceased, of whose estate Lawrence F. Connolly was appointed administrator by the probate court of Kootenai county, Idaho, where Corbett died; that when Lawrence F. Connolly pe-- titioned for such letters of administration he represented to the court that William Connolly, John Connolly, and himself were brothers, and that one Ellen Udell was their sister, all of whom were cousins of the deceased, John Corbett, and were his heirs at law, notwithstanding which representations Lawrence F. Connolly not only knew that the parties so named by him were not the heirs at law of the deceased, or the next of kin, but withheld and concealed from the complainants knowledge of the death of Corbett; that he made the said representations with intent to deceive the court and to defraud the complainants; that subsequent to the appointment of Lawrence F. Connolly as such administrator John J. Connolly and John E. McBurney became sureties on his bond as administrator, and that in March,. 1907, the said administrator filed an inventory and appraisement of the estate of the deceased, showing its value to be $21,356, which the complainants alleged was grossly disproportionate to its real value; that subsequently, and on August 2, 1909, the said administrator prayed for a decree of distribution of the estate, falsely representing to the court that he and his said brothers and his sister were heirs at law of the deceased, which representations were made with the knowledge and assent of the said brothers and sister, and with intent to deceive the court and defraud the complainants; that subsequently, and on August 23, 1909, the said probate court, acting upon that petition and by reason of the said false representations, entered a decree distributing to said Lawrence, William, and John Connolly, and Ellen Udell, all of the said estate in equal parts, and thereafter, on the 28th of June, 1912, the said Lawrence F. Connolly, as such administrator, distributed the estate to himself and to his brothers and sister, each knowing that none of them was rightfully entitled to any share in the estate; that about a year after the entry of the decree of distribution the death of Corbett was first brought to the knowledge of the complainants by neighbors who read of the same in a newspaper; that the complainants Celia and Bridget, who were unable to read or write, at once had a friend write to their mother of the death of their uncle, John Corbett, believing, under the advice of their counsel, that their mother was the sole heir of the deceased, and acted in that belief until about August, 1916, when they went to Idaho, where they were told by Caleb Jones, an attorney at law of Spokane, Wash., that they were the heirs of the deceased in their own right; that Lawrence F. Connolly, while administrator of the estate of the deceased, went to Ireland, where the complainants lived, and by fraud and misrepresentation as to the value of the estate procured an assignment to himself, of date April 1, 1911, of all the interest of Bridget Madden, their mother, who was then 85 years of age, and an illiterate woman of failing understanding, in the estate of the deceased, John Corbett; that thereafter, and in the year 1912, a suit was instituted in a state court of Idaho in behalf of Bridget Madden to establish her right to succeed to the estate of the deceased, which suit resulted in a decision of the Supreme Court of the state to the effect that she never had any interest or right therein (Connolly v. Reed, 22 Idaho, 29, 125 Pac. 213) ; that thereafter the Attorney General of the state, in connection with counsel for Bridget Madden, instituted a suit to have the said estate escheated to the state of Idaho, which suit resulted adversely to the contentions of the Attorney General and of such counsel (Connolly v. Probate Court, 25 Idaho, 35, 136 Pac. 205).

The original bill further alleged that, during the times that have been above alluded to, the complainants Celia and Bridget were informed by a number of attorneys in whom they confided that their mother was the sole heir of the deceased, Corbett, and that they would have no direct interest in his estate until the death of their mother; that their said mother died in Ireland August 26, 1914, and that shortly before her death the complainants learned of the decision of the Idaho courts denying her claim to the estate of the deceased,

and that the plaintiffs were then told that, inasmuch as their mother had been denied any right in the estate, they could have no right, and that not until August, 1916, did they know of the disposition of the Corbett estate, or that they were the heirs of the deceased, whereupon they brought the present suit.

Subsequently the complainants by leave of the court so amended paragraph XIX of the bill, wherein it was alleged that Lawrence F. Connolly, as the administrator of the estate of the deceased, falsely represented that he and his brothers, William Connolly and John J. Connolly, and his sister, Ellen Udell, were his heirs at law, as to insert in place of the words "that said representations were made by said Lawrence F. Connolly," the following: "At the same time knowing that they were not the next of kin or his heirs at law, or as such entitled to a distributive share of said estate; that said representations were made by the said Lawrence F. Connolly while acting as administrator of said estate."

The answer of the defendants, among other things, put in issue all of the averments of fraud, pleaded in bar various sections of the Idaho statute of limitations, set up laches on the part of the complainants, the said assignment to Lawrence F. Connolly by Bridget Madden of all of her interest in the estate of the deceased, and also an alleged written contract by which for a valuable consideration Corbett provided that at his death all of his property should go to the said Lawrence F. Connolly, John J. Connolly, William Connolly, and Ellen Udell. After trial the bill was dismissed at the complainants' cost, from which decree the present appeal comes.

Caleb Jones, B. B. Adams, and O. C. Moore, all of Spokane, Wash., for appellants.

C. W. Beale, of Wallace, Idaho, and Ezra R. Whitla, of Cœur d'Alene, Idaho, for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). When the case was before this court on writ of error to the judgment of the court below sustaining the demurrer to the bill and dismissing it, that judgment was reversed, and the cause remanded, with instructions to require the defendants to answer. 251 Fed. 234, 163 C. C. A. 390. The question of the sufficiency of the bill is therefore settled.

One other thing we must take to be settled, and that is the fact, found by the court below, that the deceased, Corbett, was the half-brother of Bridget Madden. The record would not, in our opinion, justify us in interfering with that finding. Therefore it is clear, in view of the former decision of this court (251 Fed. pp. 237, 238, 163 C. C. A. 390), and of the statutes of Idaho and the decisions of its Supreme Court there referred to, and of the further fact shown by the record that Bridget Madden, a nonresident foreigner, failed to initiate her claim to the estate of the deceased within the required statutory time after his death, there can be no doubt of the right of the appellants Celia Diamond and Bridget McGrail to judgment, unless they failed to establish by proof the alleged fraud, or their rights are barred by limitation or laches, or by the conveyance from Bridget Madden, or by the alleged written contract by which for a valuable consideration Corbett provided that at his death all of his property should go to the said Lawrence F. Connolly, John J. Connolly, William Connolly, and Ellen Udell.

[1] Respecting the latter alleged contract the court below said in its opinion:

"In support thereof defendant offered in evidence a writing bearing date April 28, 1899, at Erina, Nebraska, where all the parties then resided. For certain valuable considerations, therein named, Corbett agreed that at his death all his property should in equal shares go to the four Connollys, and upon the other hand, in case of the prior death of a Connolly, Corbett was to share in his estate equally with the other parties. To the instrument are attached the genuine signatures of all the parties, including Corbett. The infirmity of the instrument as evidence lies in the fact that it consists of two pieces of paper glued together, upon one of which is the body of the agreement, and upon the other the signatures and date line together with the name of a witness. In corroboration of his own testimony as to the circumstances of its execution, defendant produced in court a citizen of Nebraska, living near Erina, who testified that he drafted the instrument, and explained how pieces of paper happened to be used. Another witness testified that Corbett left it in his keeping for a short time, and still another as to finding it with other effects of the intestate some time after his death. There was no attempt to cover up the fact that the instrument is 'pieced,' for the body is in green type while the latter part is in purple It bears the appearance of having been in its present condition for a considerable time, and the relations existing between the parties at the date it bears were such that it cannot be said to be improbable that Corbett would have entered into such an arrangement.

The veracity of the witnesses is not impeached, there is no contradictory testimony, and there are corroborating circumstances. But, upon the other hand, there are certain inherent improbabilities and opposing circumstances. Upon the one side it is pointed out that defendant did not plead or produce the instrument in the probate court, and upon the other it is to be said that at the very outset, when the controversy first arose, he referred to it, and soon thereafter exhibited it to Bridget Madden's attorneys. Upon the whole, it is thought that if, in such a case, it were requisite only that there be a preponderance of the evidence, the finding would have to be for the defendant; the weight is decidedly upon that side. But, while I have discovered no adjudication upon the subject, I am inclined to think that, where the law requires evidence of a transaction to be in writing, an instrument of this character ought not to be received, unless the proofs are so convincing as to leave little, if any, room for doubt that it was in the same condition when it was signed. It is so unusual for parties to commit their agreements to a form so objectionable that a strong presumption should be indulged against it, especially in a case where, as here, one of the parties is dead.

Injustice may sometimes result from the enforcement of such a rule, and in this case the rejection of the instrument may so result. But such a possibility also attends the enforcement of the rule requiring written evidence. The imprudence of putting a contract containing executory provisions to become operative only upon the death of one of the parties into such an unusual and precarious form should have been obvious, and, if the defendant suffers by reason of the rejection of the instrument, his loss must be attributed to his own want of care. My conclusion is that, while preponderating in the defendant's favor, the proofs are not sufficiently conclusive, and hence the offer should have been rejected, and accordingly the instrument will be stricken out and disregarded."

An inspection of the original of that alleged contract which was afforded us at the oral argument of the case confirms us in the opinion that the court below was right in its ruling regarding it.

The defenses based upon laches and the limitations prescribed by the statutes of Idaho were covered and disposed of by the former decision of this court (251 Fed. page 241, 163 C. C. A. 390), where it was also decided that the sureties of the administrator were proper parties to the suit in order to do complete justice "in case the administrator should fail to pay."

[2] That leaves only the question of fraud, which is, in our opinion, the only real question for our consideration and determination on the present appeal. Upon the evidence the court below reached the conclusion that there was no fraud upon the part of the administrator, and gave judgment for the defendants.

There are certain pregnant facts in it which preclude us from taking that view of the case. That he who undertakes the administration of the estate of a deceased person is a trustee for the heirs of the deceased was expressly held by this court when the case was last here, and is the well-established law. Many years ago, in the leading case of Michoud et al. v. Girod et al., 4 How. 503, 11 L. Ed. 1076, involving a purchase by executors at public sale of property of the estate, where they were empowered by the will to sell the estate of their testator for the benefit of heirs and legatees, a part of which heirs and legatees they themselves were, the Supreme Court of the United States said:

"The rule of equity is, in every code of jurisprudence with which we are acquainted, that a purchase by a trustee or agent of the particular property of which he has the sale, or in which he represents another, whether he has an interest in it or not—per interpositam personam—carries fraud on the face of it. * * * The general rule stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity. It restrains all agents, public and private; but the value of the prohibition is most felt, and its application is more frequent, in the private relations in which the vendor and purchaser may stand towards each other. The disability to purchase is a consequence of that relation between them which imposes on the one a duty to protect the interest of the other, from the faithful discharge of which duty his own personal interest may withdraw him. In this conflict of interest, the law wisely interposes. It acts not on the possibility that, in some cases, the sense of that duty may prevail over the motives of self-interest; but it provides against the probability in many cases, and the danger in all cases, that the dictates of self-interest will exercise a predominant influence, and supersede that of duty. It therefore prohibits a party from purchasing on his own account that which his duty or trust requires him to sell on account of another, and from purchasing on account of another that which he sells on his own account. In effect, he is not allowed to unite the two opposite characters of buyer and seller, because his interests, when he is the seller or buyer on his own account, are directly conflicting with those of the person on whose account he buys or sells."

The evidence in the present case shows that Corbett died in January, 1907, and that the decree of distribution of his estate upon the petition of the administrator was entered August 23, 1909, and that on the 28th of June, 1912, the entire estate was actually distributed by the administrator to himself, his brothers, and his sister. Between the time of the entry of the decree of distribution and such actual distribution, however, according to the evidence, to wit, in the spring of 1911, the administrator went to Ireland, taking with him a Catholic priest, to see the old and ignorant woman, Bridget Madden, for the purpose of acquiring all of her interest in the estate. It is undisputed that, being the half-sister of the deceased, she was, under and by virtue of section 5702 of the Revised Codes of Idaho, entitled to the entire estate, and by virtue of section 5715 of the same Codes, although a nonresident foreigner, was entitled to take the estate by succession at any time within five years after the death of the decedent.

The record, therefore, shows that Bridget Madden was, in the spring of 1911, at the time she was approached at her home in Ireland by the administrator of the estate of the deceased, accompanied as he was by the Catholic priest, entitled as next of kin to succeed to the entire estate of the deceased (Corbett), and that she then had nearly a year within which, under the law of Idaho, to make claim to it. This case is therefore, wholly unlike that of Wilson v. Day, 260 Fed. 788, 171 C. C. A. 514, referred to in the opinion of the court below, for there the property in question had ceased to be property of the estate of the deceased when the negotiations in question in that case occurred. See page 798 of 260 Fed. (171 C. C. A. 514).

The learned judge seems from his opinion to have attached great importance to the testimony given on behalf of the defendants, to the effect that the administrator did not know and had never heard of the existence of Celia Diamond or Bridget McGrail prior to the entry of the decree of distribution. But, beyond any sort of question, he did know while still administrator, and therefore trustee of the estate of the deceased, that if and when the right of succession existing in Bridget Madden should cease by reason of her failure to claim the estate within five years after the death of the deceased, there might be other "next of kin" entitled to take by succession under and by virtue of the above-cited section 5702 of the Idaho statute which provides that

"If the decedent leave neither issue, husband, wife, father, mother, brother nor sister, the estate must go to the next of kin in equal degree," etc.

For such "next of kin," whoever they might be, the administrator of the decedent's estate continued trustee. Yet, while occupying that relation to the estate, and to whoever might be entitled to succeed to it under the law of Idaho, the uncontradicted evidence shows that the administrator went to Ireland in the spring of 1911, taking with him a Catholic priest, and on the 10th day of April of that year obtained from Bridget Madden, the half-sister of the deceased, in consideration of $2,500 paid to her, and $1,500 paid to her lawyers, a deed purporting to convey to him the entire estate of the deceased, which was appraised under his administration, as has been seen, at $21,356 in value, and which the evidence shows in truth greatly exceeded that amount.

It is true that the appellants Celia Diamond and Bridget McGrail did not and could not, as we think and as did the court below, claim to derive any right under or through Bridget Madden, but only as next of kin of the deceased in the event she did not make claim to the estate as heir within the five-year period allowed by the Idaho statute for that purpose. But, most obviously, the administrator represented, as trustee, that contingent right in them precisely the same and to the same extent as he represented as trustee the right of Bridget Madden as heir; and the same principle of equity, in our opinion, forbade him from acquiring, or in any way defeating, the interest or right of either the heir or next of kin.

The judgment is reversed, and the case remanded to the court below, for further proceedings in accordance with the views above expressed.