## GRIMES et al. v. GRIMES et al.
### No. B–37.

District Court, D. Nevada.
June 25, 1931.

S. C. Herren, of Barrington, Ill., and William McKnight, of Reno, Nev., for plaintiffs.

Cooke & Stoddard, of Reno, Nev., for defendants.

NORCROSS, District Judge.

This is a suit in equity brought by plaintiffs, who are heirs at law of W. C. Grimes, deceased, against Ellen R. Grimes, widow, devisee and trustee under the will of said decedent, and L. N. French, individually and as administrator with the will annexed.

Plaintiffs pray relief to the effect that defendants hold an undivided one-half of the estate of said decedent in trust for plaintiffs subject to the terms and conditions of said last will and testament; that the defendant L. N. French account to plaintiffs for one-half the sum of $3,300 allowed and paid to him as a claim against the estate; for the appointment of a receiver; and for general relief.

The relief prayed for is based mainly upon allegations of fraud upon the part of defendants in representing to the Second judicial district court of the State of Nevada, in proceedings before that court in the matter of the estate of W. C. Grimes, deceased, that all of the estate was community property, when in fact it was separate property. It is further alleged in an amendment to the original bill of complaint that the defendant French fraudulently induced one S. C. Herren, an attorney for plaintiffs who came to the state of Nevada from the state of Illinois to investigate matters concerning the estate, to desist from filing proceedings in the state court to obtain a modification of the final decree of distribution until after the time limit, six months, had expired in which such proceedings could be instituted. The answer denies all allegations of fraud.

The record discloses a number of hearings on motions to dismiss, for the appointment of a receiver, and for other purposes prior to taking testimony upon the original hearing. The case was finally tried and submitted, and was under consideration by Judge Farrington at the time of the latter's death. The case has subsequently been retried and submitted.

The defendant Ellen R. Grimes died November 15, 1928. Prior to her death she had assigned her interest in the estate to the defendant L. N. French as her agent and trustee, against whom the case is continued.

By the terms of the last will of W. C. Grimes, one-half of all the property of decedent was bequeathed to his wife absolutely. The remaining one-half was bequeathed to her in trust during her lifetime, she to have "all the income, interest, dividends and profits from the said property, and to retain said income, interest, dividends and profits for her own use and benefit during her life, and without the necessity of accounting to any person or court whatsoever as to the manner in which she may use or dispose of the same." The will further provided that upon her death "the property hereby bequeathed to her in trust, shall vest in and be equally divided between my brothers and sisters" or their descendants in the event of their death.

W. C. Grimes died March 24, 1920. On April 19, 1920, a petition for probate of his will was filed in the state court. The petition among other matters recited "that all of the estate of said deceased, both real and personal, is community property." At the time of the hearing upon the petition some testimony, particularly that of the surviving widow, was offered concerning the character of the estate as respecting any portion there-

of being separate property. At the time of the hearing the court appointed an attorney to represent the absent heirs; all of the heirs at law, other than the widow, residing outside the state. On August 14, 1920, an inventory and appraisement was filed; the personal estate being appraised at $83,698.66 and the real property at the sum of $1,000. The inventory made no statement respecting the character of the property as being community or separate, as required by Nevada Compiled Laws, § 9687. On February 24, 1921, the first and final account together with a petition for distribution was filed in the state court. On April 1, 1921, pursuant to notice, a hearing was held before the state court, testimony taken, the account approved, and final decree of distribution entered. Respecting the character of the estate, the final decree contains the following statement: "And it further appearing that the whole of said estate is common property, it having been acquired by said deceased after his marriage to Ellen R. Grimes his surviving widow." The estate distributed to the surviving widow in her own right and in trust, consisted of the following: Cash, $17,823.76; promissory notes, $50,938.64; Liberty bonds, $3,109.97; realty, appraised value, $1,000—a total of $72,872.37. Shortly following distribution, the notes were paid, and the proceeds, or major portion thereof, invested in various corporate stocks.

Throughout the proceedings in this case it has been the contention of defendants that plaintiffs are not entitled to maintain this suit for the reason that the fraud alleged respecting the character of the property constituting the Grimes estate concerned a matter presented for consideration and determination in the estate proceedings in the state court, and that the decree of distribution was a final judgment and not subject to collateral attack for such alleged intrinsic fraud. It is further contended that plaintiffs have wholly failed to establish the only extrinsic fraud alleged—the misleading of Attorney Herren in delaying to move to reopen the estate proceedings and to modify the decree of distribution until after the six months' limitation for such purpose had expired; and, further, that a fraud occurring after the entry of final decree cannot relate back so as to be made available for attack upon the decree itself.

■ While plaintiffs had knowledge of the probate proceedings, of the provisions of the will and the fact that the estate would approximate $70,000, shortly following the institution of such proceedings, no action appears to have been taken by any of them respecting the estate or its character pending administration, which continued for a period of nearly a year. It was not until some months following receipt of a copy of the decree of distribution that plaintiff John M. Grimes, learning that S. C. Herren, a Chicago attorney, was going to the state of Washington on legal business, requested the latter to stop also in Nevada, make some investigation of the Grimes estate matter, and attend to having the decree amended to include the name of a niece of the decedent which had been omitted from the list of heirs entitled to share in the estate subject to the trust provision of the will. Attorney Herren arrived in Nevada late in August, 1921. He first visited Fallon, the county seat of Churchill county, and made some examination of the records in the county recorder's office of that county. He then came to Reno, where he had an interview with defendant French. It is upon this interview that the allegation is made in an amendment to the complaint that the defendant French fraudulently assured Herren that no objection would be interposed if a petition to modify the decree of distribution in respect to the estate of the decedent being separate rather than community property was not filed within six months from the date of decree as prescribed in the rules of the state district courts.

In the view taken of the law controlling a case of the character under consideration, it is unnecessary to refer at length to the questions presented respecting the allegation of fraud committed subsequent to entry of final decree. Suffice it now to say that the testimony submitted upon the part of plaintiffs in support of this latter allegation even if not controverted would scarcely support a conclusion that plaintiffs had been fraudulently misled into delaying proceedings to reopen the decree. Conceding without deciding that such an alleged fraud if established would entitle plaintiffs to relief, the evidence submitted clearly would not justify such a finding.

■ If, as claimed by plaintiffs, the estate of W. C. Grimes, deceased, was clearly separate property, which would materially affect the amount properly distributable as trust estate, and defendants failed to present available essential facts to the court, then may plaintiffs by action in personam in this court obtain a decree to the effect that defendants, or either of them, hold in trust for their ben-

efit a portion of the estate in excess of that so decreed by the state court? This question is answered in the affirmative by two comparatively recent decisions of the Circuit Court of Appeals of this circuit. Diamond v. Connolly, 251 F. 234; Id., 276 F. 87; Hewitt v. Hewitt, 17 F.(2d) 716. See, also, Laun v. Kipp, 155 Wis. 347, 367, 145 N. W. 183, 190, 5 A. L. R. 655.

■ As devisee, trustee, and executrix named in the will and as administrator with the will annexed, respectively, defendants, in their relation to the other heirs of the estate, held a position of trust and confidence imposing upon them a positive duty to fully advise the court respecting available material facts concerning the value and character of the estate, and particularly respecting property rights and interests at the time of decedent's marriage.

If in fact the estate was separate property of decedent, the value of the share subject to distribution in trust would approximate, in round figures, $36,500. If the estate was all community, as determined by the state court, the portion to be distributed in accordance with the trust provision of the will would only be one-half such amount. If the estate was in part separate and in part community, the distribution would vary accordingly.

■ If it were essential to find actual fraud in the estate proceedings, the court may not be justified in so concluding, but it is not necessary so to find in order that plaintiffs may be entitled to a decree in their favor. If the court can now say there was evidence available which was not fully submitted to the state court sitting in probate, which defendants were in duty bound to submit, an enforceable trust relation results if by such failure to submit plaintiffs were deprived of a portion of their bequest. Both at the time of the admission of the will to probate and on the hearing of the petition for distribution some testimony was submitted to the effect that at the time of the marriage of the testator, Grimes, the latter owned and was in possession of certain ranch property which he continued to possess until shortly prior to his death. The court's attention, however, was not called to the precise amount and character of such property as it existed at the time of marriage.

It appears from the foregoing statement that some portion of the estate of the decedent Grimes was separate property. It also appears from the testimony submitted upon the trial of this case that in the proceedings in the state court the petitioner and the administrator proceeded upon the theory that, because the property had been improved and developed during the period of nearly forty years following the marriage of the decedent and the defendant Ellen R. Grimes, the community interest and the separate interest of the decedent had become so commingled that it was impossible to determine the value of the separate interest, and that in any event it was small.

The record discloses that the decedent and said defendant Ellen R. Grimes were married at Carson City, Nev., on April 29, 1879. Immediately following their marriage they went to live upon a ranch in Churchill county, Nev., then occupied by the testator and owned by him and one William Hill. Said Grimes and Hill held said ranch property, then comprising 1,273 acres, as tenants in common. Shortly following said marriage, said William Hill and his wife left the ranch for a trip to Germany. Some six months later Hill returned to Nevada. There is some testimony indicating a possible understanding or agreement entered into between Hill and Grimes upon the occasion of this visit for the ultimate sale of the Hill interest to Grimes. In 1881 an agreement of partnership was entered into between Grimes and Hill whereby the ranch was to be conducted by Grimes, for which he was entitled to be compensated and was to account to Hill, who continued to reside in Germany. A deed from Hill to Grimes for Hill's undivided one-half interest in the property was executed and delivered to Grimes in the year 1902. Final payment to Hill for the purchase price was not made until the year 1914. Shortly following the marriage of the decedent and defendant Ellen R. Grimes, 200 additional acres of land adjoining and which became a part of the Grimes ranch, were contracted for from the state in the name of Ellen R. Grimes, and full title acquired therefor in the year 1917. In August, 1918, the ranch property, consisting of the land and improvements thereon, was sold for a consideration of $46,000. Prior to such last-mentioned sale, however, the decedent Grimes had sold 120 acres to one Philips for a consideration of $3,500. Included in the land sold to Philips were 40 acres of the land purchased in the name of Ellen R. Grimes. At the time the ranch was sold in 1918, the stock and other personalty thereon was also sold to the purchaser for a further consideration of $20,000.

At the time of the marriage in 1879, the ranch of Grimes and Hill had approximately a thousand acres under fence, had constructed upon it a substantial farm house, barn, and other outbuildings, corrals, and other usual adjuncts. It produced from 400 to 800 tons of natural wild hay annually, and several hundred head of stock were fed, pastured, and ranged in conjunction with the ranch.

It is these facts which were not submitted to the probate court. The undivided half interest of Grimes in the ranch property was clearly separate property at the time of the marriage. It continued such separate property, and was such at the time of the death of Grimes. Whatever improvements were made upon the ranch as a whole during the years of coverture would be separate or community property as the land itself might be so classified. Lake v. Bender, 18 Nev. 361, 4 P. 711, 7 P. 74; Lombardi v. Lombardi, 44 Nev. 314, 195 P. 93; Barrett v. Franke, 46 Nev. 170, 208 P. 435. One-half of the consideration received for the sale of the ranch in 1918 and one-third of that received from the sale of the 120 acres to Philips, a total of $24,166.66, more than one-fourth of the entire estate, was separate property.

It is contended on behalf of plaintiffs that the undivided one-half interest in the original ranch property, the legal title to which was conveyed by Hill to Grimes after the latter's marriage, was also separate property. Two reasons are advanced for this contention: First, because Grimes had acquired an equitable right thereto prior to his marriage; and, second, because the purchase price thereof was paid for out of the rents, issues, and profits of his separate property. The contention of an equitable right acquired prior to marriage is based on the theory that a tenant in common has an equitable right to acquire the interest of a cotenant. No authorities are cited in support of this contention. The respective rights of tenants in common in land are of a legal, and not of an equitable, character. Hill could have sold his undivided one-half interest to a third person without the consent or approval of Grimes.

Presumptively the undivided half interest in the real property acquired from Hill, and the proceeds from the sale thereof, is community property because the Hill interest was acquired after marriage. The same is true of all the remaining property comprising the estate. The burden of proof was on plaintiffs to show clearly that all or some part of the estate acquired after marriage was derived from the rents, issues, or profits of that portion of the estate owned prior thereto. The most that can be said is that some of the estate subsequently acquired is of doubtful character, but a doubt is not sufficient to overcome a legal presumption.

At the time of the marriage the assessed value of the land and improvements comprising the ranch of Grimes and Hill was $4,350. Nine hundred and forty cattle and forty-two horses were assessed at $10,250. The year the partnership was entered into most of the cattle were sold; the assessment roll for that year showing but forty head valued at $320. Whether the large number of cattle assessed to Grimes and Hill in 1879 were paid for, or whether that holding also represented a large indebtedness, does not appear. The years that elapsed before Grimes purchased the Hill interest, and the further period following before the balance of the consideration for the purchase was fully paid, is not persuasive that either Grimes or Hill realized any considerable net profit from the sale of the nearly one thousand head of cattle in 1882. When the ranch property was sold in 1918 there were also sold several hundred head of cattle, and the sale price of these cattle constituted the major portion of the $20,000 paid for the personal property on the ranch. If it could be said with any reasonable degree of certainty that any substantially definite portion of the cattle sold in 1918 was derived from the rents, issues, and profits of the ranch rather than from the joint efforts of husband and wife for a long period of years, then a portion of the $20,000 so received should also be classed as separate property. The record is void of accounts kept by the decedent Grimes. One can but speculate as to from what source the cattle sold in 1918 were derived. If it appeared that Grimes had no other source of income than the ranch, then the conclusion would readily follow that his holdings of live stock were traceable to that source. The testimony discloses he was interested in other enterprises besides ranching and stock raising. It also appears that for eight years he served as district attorney of Churchill county, and his salary for that period was $6,000. Where, as in this case, it appears that the decedent had other sources of income, considered in connection with the vicissitudes that have attended the business of stock raising, it is not reasonable to say the presumption that the interest in live

stock in 1918 is community property is overcome simply because a separate interest is established in an undivided one-half interest in a ranch property upon which for the time being they are cared for.

It is the conclusion of the court that the presumption of community interest in all property constituting the estate which was acquired subsequent to the marriage has not been overcome by the evidence submitted upon the part of plaintiffs.

While the evidence respecting the character of the estate which was acquired subsequent to the testator's marriage has been considered and briefly referred to in this opinion, it is the view of the court that in this suit the court is only called upon to consider the property of the decedent as it existed at the time of marriage and any other portion of the estate that may be said to be manifestly separate property. Where, as in this case, the husband dies many years after marriage leaving a substantial estate, it is often a difficult problem to determine within any reasonable degree of accuracy what portion of the estate is separate and what portion represents community interest, one-half of which goes to the widow and is not subject to the testamentary disposition of the husband. The state probate court is the forum established by law for the determination of the amount and character of the estate. The mere fact that some of the heirs or devisees of a decedent are residents of a state other than that of the decedent, gives them no privilege to await the outcome of the estate proceedings, and then, if it does not suit them, call upon a federal court to determine issues which were open for determination in the probate court.

We have held that a duty rested upon the trustee named in the will and the administrator with the will annexed to fully present to the state court the available facts respecting the property of the decedent at the time of marriage, which the law declares to be the separate property of the testator. Because that was a duty not complied with, we have held that a suit in personam would lie in this court to enforce a trust as to any additional distributive share of the estate which the remaindermen would be entitled to and which otherwise would be lost to them by reason of failure to perform a duty imposed. While the defendants were bound to present the facts to the state court showing the condition of the property at the time of marriage and the source of the estate generally, the widow

was not required to refrain from pressing her contentions respecting community interest or to refrain from availing herself of the benefits of any presumption of which the law gave her the benefit. Plaintiffs, while not directly advised prior to the decree of distribution of defendants' contention that the estate was all community property, had knowledge of the death of the testator shortly following the occurrence, of the estate proceedings, the provisions of the will, and the approximate value of the estate. They knew that the decedent had been married for forty years and that their interest and that of the widow in the estate which was subject to testamentary disposition were adverse. They knew that the probate court would administer the estate and distribute a portion to the widow in her own right and a portion to her in trust during her life, of which estate so distributed in trust they were remaindermen. If the facts respecting the property of the decedent at the time of marriage had been submitted to the state court sitting in probate, and that court had determined all property acquired subsequent to the date of marriage to be community in accordance with the presumption to that effect, no reason suggests itself why a federal court should retry the issues thus presented to the state court where it appears the non-resident plaintiffs had full knowledge that the probate court would adjudicate all questions respecting property rights now sought to be presented in the case at bar. Plaintiffs are in this court seeking equity not only to relieve them from the effect of a failure of defendants to perform a duty imposed by a trust or station, but in effect to go further and relieve them from possible results of their failure to assume in the state court the burden of proof imposed upon them by law respecting the legal status of that portion of the estate acquired subsequent to marriage. It is a maxim of equity that equity aids the vigilant and not the slothful. In the view of the court, that maxim is applicable as applied to a determination by this court of the controversial questions respecting the legal status of the property acquired after marriage.

In 1898 the testator Grimes received by inheritance from the estate of a deceased brother the sum of $1,000. It is contended by plaintiffs that the defendant should account for this amount on a "fair interest return" from the time it was received. What disposition was made of this money does not appear. It may or may not have been prof-

itably invested. If profitably invested, such profit is reflected in the general increase in the value of the estate over the value thereof at the time of marriage. It is impossible to segregate this item of separate property, and the contention is without merit.

It is contended that the defendant French should account to plaintiffs for a portion of the claim for $3,300 which was allowed by the state court and paid in course of administration. The claim was for services rendered in the sale of the ranch property. It was approved by the judge of the state court in the regular course of administration. It is not a matter that can be reviewed or considered in this case.

Contention is also made that defendant French should similarly account for fees allowed H. R. Cooke and R. L. Stoddard as attorneys for the administrator for the reason that they were law partners of Judge French, who should have performed the services himself without charge other than the allowance authorized by statute to be paid to an administrator. This also was a matter settled by the final decree and not within the purview of this suit.

It is further contended that the defendant French should account for the value of two certain lots at Lake Tahoe, Cal., purchased prior to the death of the testator in the name of Ellen R. Grimes. It is sufficient to say that these lots were never a part of the estate subject to administration in the state courts of Nevada even assuming the testator had a separate or community interest therein prior to his death. The testimony is that they have been included in the estate of Ellen R. Grimes administered upon in the state of California.

One-half of the proceeds of the sale of the ranch being unquestionably separate property, the portion of the estate distributed to the widow subject to the trust provision of the will represented a value of $23,415.-70. There is therefore a balance of the principal of the trust fund due and payable to plaintiffs in the sum of $5,202.61.

At some time subsequent to the distribution of the estate the defendants took up their residence in the state of California, and that portion of the estate which was personal property, cash, notes, and bonds, was taken and thereafter held in the latter state. For this reason, pursuant to a motion of plaintiffs, this court on June 16, 1927, entered an order directing the defendant French to deliver to the clerk of this court for deposit in the Washoe County Bank, a depository agreed upon by the respective parties, "all the securities, bonds, notes or moneys or other property now in his possession which constitutes any part of the trust fund that may now be in his possession." In compliance with this order certain stock certificates were so deposited. Following the death of the defendant Ellen R. Grimes, this court by order of date April 3, 1929, directed the depository to sell certain of said stocks, and out of the proceeds to pay to plaintiffs the sum of $18,213.09, an amount admitted to be payable to them as remaindermen. The order further provided that the depository retain possession and control by deposit in its savings account in the name of the clerk of this court all money derived from such sale in excess of said amount. The stock so directed to be sold realized a net amount in cash of $44,544. On May 1, 1929, the sum of $18,213.09, pursuant to the said order, was paid to plaintiffs.

It appears that the stocks sold by the depository bank in pursuance of the court order represented an original investment of $35,007, so there was a profit on this investment of $9,537. Plaintiffs contend that, as this profit in whole or in part was derived from an investment of trust funds, they are entitled to a portion thereof. The court is of opinion this contention is without merit. It is clear from the provisions of the will that the testator only intended that the corpus of the trust estate should go to the remaindermen. "The property hereby bequeathed to her in trust, shall vest in * * * my brothers and sisters," upon her death, is the language of the will. The property bequeathed and distributed in trust, as heretofore determined, was cash, promissory notes, and bonds payable in cash and of the equivalent value of $23,415.70. By the terms of the will the "income, interest, dividends and profits" were to be retained by the trustee "for her own use and benefit during her life and without the necessity of accounting * * * as to the manner in which she may use or dispose of the same."

If plaintiffs had not moved this court to impound certain securities for the protection of plaintiffs pending the final decision of the case, defendants could have sold the same at any time prior to the death of the widow, and the profits thereof clearly would have been hers and for which she could not be called upon to account. We cannot conceive of any principle of law or equity which would permit the impounding of a trust fund upon the

theory of preventing possible waste of the corpus of such fund, thus preventing the trustee from exercising dominion over the same, and then the remaindermen, upon the death of the trustee so deprived of control, be allowed to take, not only the corpus of the trust fund or estate, but the profits that have accrued thereto as a result of investments made by the trustee in the exercise of her lawful dominion over the property constituting the trust estate.

Plaintiffs are entitled to a decree that there be paid to them the further sum of $5,-202.61, together with any interest accrued thereon and paid or payable by the depository. Plaintiffs are entitled to be reimbursed for their costs of suit. All other funds are to be paid by the depository to the defendant French. A decree will be entered accordingly.

The respective parties are directed to submit proposed findings and form of decree. It is so ordered.