of the opinion that the appraiser has committed no error, and that the decree as entered, exempting the legacies as provided by section 221 of the transfer tax law (Laws 1896, p. 869, c. 908) must be affirmed.

Decree affirmed.

(54 Misc. Rep. 188)

## In re MENZIE'S ESTATE.

(Surrogate's Court, Madison County.   April, 1907.)

1. JUDGMENT—RES JUDICATA.

In 1884 testator's widow, who was a life beneficiary under the will, was a party to the settlement of the accounts of the executor, and consented thereto in writing.  Held that, on the accounting of the executor as trustee in 1907, the widow was estopped from raising any questions that she might have raised on the former accounting.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 30, Judgment, §§ 1234, 1241.]

2. TRUSTS—INVESTMENT OF TRUST FUNDS.

An executor as trustee was directed to invest about $3,000 and to pay over the interest annually to testator's widow for life.  On the entry of the decree the balance for distribution, which was about $7,000, was already invested to the extent of $4,000 in a mortgage which the testator held in 1879 on a farm which was sold in 1882 for $7,500.  The mortgage and a $500 village bond were the only assets allowable as a trust investment.  Held, that the election by the trustee to allow the trust fund to remain in the mortgage was not an abuse of discretion.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 306.]

3. SAME—DEPRECIATION IN TRUST FUNDS.

A trustee holding a mortgage of $4,000 on a farm foreclosed it in 1891, and rented it until 1897, when he sold it taking back a mortgage for $1,500 and a city house incumbered for $200.  The mortgage was paid and $500 of the amount was invested in the certificate of a trust company in Iowa.  Held, that he would not be charged for the loss arising from the depreciation in the securities since 1889.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, § 310.]

4. LIFE TENANT—EXPENSES OF PROPERTY—LIABILITY.

A life tenant must pay for the ordinary repairs, taxes, interest on incumbrances, if any, and insurance; but, where the investment was changed from personalty to realty, and for nine years practically yielded no revenue above the amount sufficient to preserve the fund for the remaindermen, the life tenant would not be required to pay the expense.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 33, Life Estates, § 41.]

5. TRUSTS—INVESTMENT OF TRUST FUNDS.

An investment by a trustee in the certificate of a trust company in Iowa is improper, and the trustee will be required to take it up and invest it as required by law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Trusts, § 307.]

In the matter of the estate of George W. Menzie, deceased.  Proceedings on the accounting of a testamentary trustee.  Decree rendered.

E. Leland Hunt, for George L. Menzie.
Albert E. Campbell, for Esther Menzie.

KILEY, S.  The above-entitled proceedings were instituted by Esther Menzie, life beneficiary under the will of George W. Menzie,

deceased, by the filing of a petition September 8, 1906, asking that George L. Menzie, testamentary trustee under the will of said decedent, be required to make and file and proceed to an accounting and judicial settlement of his accounts as such trustee. Upon such petition the said trustee was directed to make and file his account as such trustee, within the time specified in said order directing an accounting; and, pursuant to such direction the trustee, George L. Menzie aforesaid, did on October 6, 1906, file a petition for an accounting of his trust as such trustee, and with it his account. On December 1st thereafter Esther Menzie, the beneficiary under the will of the said decedent, filed an answer to such petition and account, in and by which she challenges the good faith of the trustee in the management of the estate, in which she has a life interest, and objects to certain items of expenditure with which he has credited himself in and by which the income of the said estate was materially depreciated, to her loss as such beneficiary. The contestant and beneficiary derives her interest in the estate under the will of her deceased husband, which will is dated June 2, 1881, and duly admitted to probate before the Surrogate's Court of Madison county on the 2d day of September, 1882. The portion of said will, necessary for consideration here, is as follows:

"Second. I give and devise to my beloved wife Esther the dwelling house and lot now occupied by me as a residence in the village of Canastota, N. Y., together with all the appurtenances thereto belonging for and during the term of her natural life the buildings to be kept insured and in good repair by her; and from and after her death I give and devise the said house and lot to my two sons George Le Roy Menzie and John W. Menzie and to their heirs and assigns forever share and share alike. I also give and bequeath to my said wife the use and enjoyment during her life of my black walnut book case and the books therein contained, the large gilt parlor looking glass, the marble top side board and the marble top black walnut bed room set of furniture consisting of bed-stead dressing bureau and washstand—I also give and bequeath to my said wife and to her heirs and assigns forever all the rest residue and remainder of my household furniture and utensils including beds, bedding, pictures, jewelry, crockery, plate curiosities and ornamental articles in and about the house, her personal ornaments and wearing apparel to be absolutely hers forever and at her own disposal.

"Third. I give and bequeath to my son George Le Roy Menzie and to his heirs and assigns forever—after the death of my said wife—the large black walnut bed room set of furniture—consisting of bed-stead dressing bureau and wash stand and also my marble top side board and also the undivided one-half of all my books; I also give and bequeath to my said son George Le Roy and to his heirs and assigns forever my gold watch-chain which I now wear.

"Fourth. I give and bequeath to my son George W. Menzie and to his heirs and assigns forever—after the death of my said wife—my black walnut book case, the large gilt parlor looking glass and the other undivided one-half of all my books. I also give and bequeath to my said son John W. and to his heirs and assigns forever my gold watch which I now wear.

"Fifth. I give and bequeath to my niece Electa Gee wife of Decatur Gee, of Canastota, N. Y. the sum of one hundred dollars to be paid to her by my executor within eighteen months after my decease.

"Sixth. I give and bequeath to my niece, Sarah E. Thompson of Eagle Bridge, N. Y. the sum of fifty dollars to be paid to her by my executor within eighteen months after my decease.

"Seventh. I give devise and bequeath to my son George Le Roy Menzie and to his heirs and assigns forever one-half of all the rest and residue of my property of every name and nature.

"Eighth. I give devise and bequeath to my said wife Esther the use profits and enjoyment during her natural life of the other one-half of all the rest residue of my property and estate of every name and nature and from and after her death I give devise and bequeath the capital or principal thereof to my son John W. Menzie and to his heirs and assigns forever."

The deceased testator was the father of the accounting trustee. Esther Menzie, the contestant, is the stepmother of the trustee and of the remainderman, John W. Menzie. The accounting trustee is the same named in the will of George W. Menzie, deceased.

From the evidence given before me upon the several hearings had herein, it appears that on the 24th day of May, 1884, this trustee had a settlement of his accounts before the Surrogate's Court of Madison county and to which proceeding and settlement this contestant, Esther Menzie, was a party and that she consented thereto in writing; that a decree was duly made and entered, and, up to that date, she is bound by the said decree and by all its provisions. She is also estopped from raising any question that she might have raised at that time. The decree is conclusive on matters then within the jurisdiction of the Surrogate's Court. Laney v. Laney, 19 N. Y. Supp. 518, 64 Hun, 637. That decree allowed and adjusted the account of the executor, as filed by him, and found that the balance for distribution in his hands was the sum of $6,553.25, and directed the disposition of it at that time as follows:

"That he retain the sum of $3,527.96 in full payment of his legacy under said will; that he invest and keep securely invested in good interest-bearing securities the residue thereof, to wit, the sum of $2,925.38 and pay over the interest or income arising therefrom, annually, to Esther Menzie during the term of her natural life, and at her decease pay said principal sum of $2,-925.38 to John W. Menzie in full payment of his legacy under said will."

The contestant charges that the trustee did not invest and keep securely invested this fund created for her benefit by the will of her late husband, as required by the law and by the duties devolving upon trustees as custodians of trust funds, and that, under his negligent management, waste of the fund followed as an inevitable consequence. The trustee controverts this position, and adds as an additional defense to contestant's charges that he was acting as her agent under a power of attorney signed by her soon after the granting of the decree in May, 1884. The latter proposition I will dismiss with this observation—the trustee did not need the power of attorney to do his duty under the trust confided to him, and he is now accounting before the court as trustee and not as agent, and in making such account as trustee he should not be allowed to take refuge behind the less limited restrictions of an agent. The tendency of courts is to hold trustees to a rigid fulfillment of their duties as such, and this is right in principle. They are handling moneys and property not their own. The creation of a trust is always sacred to the party creating it, and, in selecting a trustee to carry on his wishes, the creator places upon such trustee his badge of confidence, not only in his honesty, but that the object of his bounty, as named in the instrument, will receive the best and most conscientious efforts of the trustee named. He should not be allowed to commit a sacrilege upon that confidence imposed. Has

this trustee done his best? Done as he would have in matters pertaining to his own affairs? To determine this, the facts and circumstances as they existed at the time of the decree in 1884, must be considered, appreciated, and understood. Purdy v. Lynch, 145 N. Y. 462, 40 N. E. 232. At that time the $6,553.25 of which this estate consisted was already invested, to the extent of $4,000, in what is known in these proceedings as the Bell mortgage on the Menzie farm. The mortgage was dated September 7, 1878. It was assigned to the trustee's testator January, 1879; and in November, 1882, this farm was sold for $7,500. In June, 1883, 10 acres was released from the farm, which release was prior to the judicial settlement of May, 1884. The mortgage in question was originally for the sum of $4,500, but at the date of the judicial settlement in 1884 had been reduced to $4,000. The balance of the estate was made up of a Canastota village bond, some American Express stock, and unsecured promissory notes. This trust fund had to be made up from the foregoing, and, no matter how it might be figured, a portion of it made up from the Bell mortgage. Outside of the $500 village bond, the mortgage was the only asset of the estate allowable, at that time, as a trust investment. The trustee allowed the trust fund to remain in this mortgage and also allowed upwards of $1,000 of his own interest in said estate to remain in the same security. In doing so, did he exercise proper prudence and diligence? Did he offend against any rule governing the discretionary powers of investment laid down by the courts? At the time this election was made by the trustee to allow this trust fund to remain in the Bell mortgage, the records of the sale of this property showed that the farm was fairly good security; and I fail to see how the court can hold as a matter of law that the trustee at that time failed in his duty toward this trust fund. He left it where he found it, and the account shows that the interest on the investment was being paid at that time.

Feeling compelled to hold that this investment of the trust fund by the trustee in 1884 was within his discretion, and its safety further vouched for by the silence of the beneficiary upon the proceedings preceding the decree of May, 1884, the next question that presents itself is: Did the trustee exercise a reasonable degree of diligence in looking after this investment after it had been allowed to remain as aforesaid? In examining this question the court encounters the difficulty brought about by the acquiescence of the life tenant in the acts of the trustee for 20 years, and by accepting of, and receipting for, any income which was paid to her by the trustee from such trust fund, without protest or apparent objection. The answer of the contestant fails to point out wherein the trustee erred; and the court is left to infer, from the mass of evidence taken upon the hearings, that the trustee could have extricated himself from the position in which he found himself in some other and more profitable manner than that which he pursued. The trustee foreclosed the mortgage and bid in the farm on August 26, 1891. From the account and the evidence it appears that the trustee rented the farm from the time of sale to 1897, at which time he sold it and received therefor a $1,500 mortgage on the farm and a house and lot in the city of Oneida upon which there was an incumbrance of $200. The $1,500 mortgage has been paid and rein-

vested as follows: $800 in a mortgage on a house and lot in the city of Oneida; $200 on land in the town of Lenox, this county; $500 in a certificate of the Farmers' Loan & Trust Company, Sioux City, Iowa.

The evidence shows clearly a great depreciation in the securities of this trust fund since 1889, but evidence fails to show any fault attaching to the trustee. That he received all that could be realized from the sale of the farm is not questioned by the contestant, and we have no evidence in the record where the trustee could have done differently. His account shows attention to the property representing the trust fund. The evidence fails to show that such attention was not sufficient and not intelligent. While the depletion of the trust fund and the absence of returns by way of income, by reason of such depletion is to be regretted, yet that alone is not sufficient to base a finding upon that the trustee is at fault and that his negligence caused the loss. McCabe v. Fowler, 84 N. Y. 314; Matter of Weston, 91 N. Y. 502.

Some portion of the money and interest of the trustee has always, since the death of George W. Menzie, been commingled with the trust fund. It came to him in that way, and so remains to the present time. The contestant alleges this as a fact showing dereliction of duty on the part of the trustee. I fail to see how it can be held as detrimental to the trust. He must lose when the trust fund loses, and would gain when the trust fund shows a gain; conditions placing this as a fact showing dereliction of duty on the part of the trustee when he accepted the trust and not created by him. That the trustee could legally allow his money to remain in the security with the trust fund seems to find warrant in Barry v. Lambert, 98 N. Y. 300, 50 Am. Rep. 677; Atlantic Trust Company v. Powell, 23 Misc. Rep. 289, 50 N. Y. Supp. 866.

The only remaining question requiring examination and raised by the answer of the beneficiary is whether the expenses and disbursements with which the trustee had credited himself in his account were proper charges against the income, or should be charged against the corpus of the estate. That the trustee made the payments credited to him by himself in his account is not denied; but from what fund they should be paid is questioned. It is the settled law of this state that, unless otherwise provided in the instrument creating the trust, the life tenant must bear the expense of ordinary repairs, taxes, interest on incumbrance, if any exist, and insurance. Matter of Albertson, 113 N. Y. 434, 21 N. E. 117; Stevens v. Melcher, 152 N. Y. 551, 46 N. E. 965; Chamberlin v. Gleason, 163 N. Y. 214, 57 N. E. 487; Dewitt v. Cooper, 18 Hun, 67; Wilcox v. Quinby, 73 id. 524, 26 N. Y. Supp. 114. Circumstances will, in all cases, change this rule to some extent. In the case at bar, the investment by force of circumstances, has been changed from personalty to realty, and from 1889 to 1897 yielded practically no revenue above an amount sufficient to preserve the fund for the remainderman; and for so preserving it the life tenant is called upon to pay the expense. This is not proper and cannot be allowed. Matter of Pitney, 113 App. Div. 845, 99 N. Y. Supp. 588.

Assessments for permanent improvements cannot be paid for out of the income, and must be paid out of the principal, and the courts seem to hold that the life tenant should pay interest on the amount during life. In this case she had no benefit from those particular items,

and, as her expectancy is so slight, she now being 85 years of age, the court will not attempt to figure interest against her on the basis of her expectancy. Chamberlin v. Gleason, 163 N. Y. 214, 57 N. E. 487.

In accordance with the foregoing reasoning, the following amounts are disallowed and struck out of the account as filed by the trustee:

| | | |
|---|---|---:|
| Aug. 26, 1891. | Paid Canastota Bee | $ 2 50 |
| | Paid S. M. Wing, foreclosure | 39 25 |
| | Paid P. F. Milmoe, foreclosure | 25 00 |
| | Paid J. E. Stisser, foreclosure | 11 00 |
| April 13, 1892. | Paid Travis & Wolf, insurance | 6 00 |
| Sept. 10, 1892. | Paid Farr Bros., hardware for farm | 3 48 |
| | Paid C. A. Marsh, labor on farm | 5 25 |
| | Paid D. A. Monyer, use of screws | 1 00 |
| Dec. 1, 1892. | Paid J. Stisser, work, material and repairs | 23 50 |
| July 7, 1893. | Paid Gleason, repairs to barn | 57 50 |
| | Paid Barrett, lumber | 72 62 |
| | Paid Farr Bros., hardware | 6 50 |
| | Paid M. Hess, grass seed | 14 59 |
| | Paid J. Stisser, labor and repairs | 15 64 |
| May 5, 1894. | Paid M. M. Hess, seed | 23 75 |
| June 25, 1894. | Paid McConnell, paint | 1 70 |
| | Paid P. F. Weaver, paper | 4 62 |
| April 4, 1895. | Paid Travis & Wolf, insurance | 6 00 |
| Aug. 20, 1895. | Paid John H. Cronk, seed | 10 50 |
| April 25, 1896. | Paid 5 bushels timothy seed | 10 00 |
| May 14, 1896. | Paid 180 pounds B. wire | 5 25 |
| Sept. 1897. | Paid expense of selling farm | 3 00 |
| | Paid J. E. Brewer, insurance | 4 35 |
| Dec. 25, 1897. | Paid sundries | 12 40 |
| Sept. 1897. | Paid 11 loads of dirt | 11 00 |
| April 1899. | Paid cedar posts | 5 00 |
| Sept. 26, 1900. | Paid new drain pipe | 4 69 |
| July 11, 1902. | Paid J. W. McPherson, sidewalk | 4 20 |
| July 18, 1904. | Paid strike out | 6 00 |
| | From the item of $25.63 entered as "City Tax and sewer tax." This amount is arrived at by deducting the amount of former city tax. | |
| June 4, 1904. | Paid J. S. Tanner, well pump | 5 00 |
| Nov. 8, 1904. | Paid Fitch & Conroy, sewer | 25 00 |
| Jan. 24, 1905. | Paid sewer tax | 5 77 |
| April 22, 1905. | Paid Milo Torrey, driving well | 5 00 |
| June 15, 1906. | Paid sewer cost | 87 21 |

After eliminating the foregoing items from the account, it will be then approved in that regard. I do not determine here the respective amounts of the foregoing items chargeable to the remainderman and to the trustee, individually, who is interested in the fund. The respective rights of the two last named parties, so far as the amounts struck out are concerned, may remain until the final settlement of the trustee's account with his remainderman.

A new account may be prepared and filed in accordance with this decision, and decree prepared thereon, and, if agreed upon by the contending parties, submitted to me for signature; otherwise the matter may be brought before me on five days' notice.

I am of the opinion that the $500 investment in Farmers' Loan & Trust Company of Sioux City, Iowa, is not a proper investment, and direct that the same be taken up and invested as provided by statute. The attorney for petitioner and trustee is allowed $25 for making up the

account, and $10 for each day additional, for his services in addition to his disbursements. The attorney for the contestant is allowed $60 for his services in addition to his disbursements, both of the allowances to be paid out of the principal of said fund, chargeable in proper proportions to the remainderman and trustee individually.

Decreed accordingly.