## HEWITT v. HEWITT et al.[*]

(Circuit Court of Appeals, Ninth Circuit.
February 28, 1927.)

### No. 5008.

**1. Judgment ⬤509—Federal court of equity may deprive party of benefit of judgment or decree of state court obtained by fraud.**

A court of the United States, in the exercise of its equity powers, and where diversity of citizenship gives jurisdiction over the parties, may deprive a party of the benefit of a judgment or decree fraudulently obtained in a state court, since its decree operates on the parties, and not on the state court.

**2. Executors and administrators ⬤75—Fiduciary relation exists between administrator and heirs.**

A fiduciary relation exists between an administrator and the heirs of the estate.

**3. Judgment ⬤443(1)—Heir held entitled to relief in equity against decree of distribution obtained by fraud.**

The administratrix of the estate of her deceased husband, who died intestate, had been told by him that, previous to his marriage to her, he had adopted a son, but had heard that the son was dead. Later, and within two years before his death, he made a will, of which she knew, which contained provision for the son. The administratrix did not inform the probate court nor her counsel of such facts, and the estate was settled and distributed to her and a daughter without any reference to or knowledge of the adopted son. *Held*, that her silence constituted a fraud upon him, against which a federal court of equity would grant relief by requiring the distributees to restore his share of the estate.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; William P. James, Judge.

Suit in equity by William Ellsworth Hewitt, also known as William Ellsworth Puett, against Elvira A. Hewitt and Elverna O. Gillons. Decree for defendants, and complainant appeals. Reversed, with directions.

Jefferson P. Chandler, of Los Angeles, Cal., and B. Hudson and Douglas Hudson, both of Ft. Scott, Kan., for appellant.

Wood, Janeway & Pratt and George B. Ross, all of Los Angeles, Cal., for appellees.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

RUDKIN, Circuit Judge. This was a suit by one of the heirs of David H. Hewitt, deceased, against the remaining heirs and the distributees of his estate. The relief sought was a decree declaring the defendants trustees of the plaintiff for an undivided one-third interest in the estate, for appropriate convey-

ances, and for an accounting. From a decree in favor of the defendants, the plaintiff has appealed.

The uncontroverted facts are substantially as follows:

The appellant was adopted by Hewitt on December 20, 1872, in the probate court of Bourbon county, Kan., and by such adoption was declared to be his child and heir. The appellant lived with Hewitt for about two years following the adoption, when he was taken from his custody by an order of the probate court because of cruel and inhuman treatment. After this separation the appellant did not communicate with Hewitt and purposely avoided giving him any notice of his whereabouts, or of the fact that he was living, believing that, if Hewitt knew of his whereabouts, or the fact that he was living, he would disinherit him by will. Some years after the separation, the appellant employed attorneys at Ft. Scott, Kan., to look after his interest and to keep track of Hewitt. On April 29, 1921, the attorneys so employed communicated with an attorney in Los Angeles, requesting information as to whether Hewitt was living or dead. Upon receipt of this communication, the probate records of Los Angeles county were searched; but they disclosed that no administration had been had upon the Hewitt estate. The telephone directory of Los Angeles was likewise examined, and it was found that Hewitt resided at 940 Fresno street. This residence number was called, and a woman answering the telephone stated that Hewitt was down town and would return shortly. The attorneys in Kansas were thereupon notified as to what had transpired; the attorney in Los Angeles stating that he was satisfied from the inquiries made that Hewitt was still living. On January 9, 1922, Hewitt died at Los Angeles, leaving as his sole and only heirs at law his widow, Elvira A. Hewitt, a daughter by a former marriage, Elverna O. Gillons, and the appellant his adopted son.

On August 26, 1922, about 7 months after the death of Hewitt, the attorney in Los Angeles received a second letter of inquiry from the attorneys in Kansas, of the same import as the former. Upon receipt of this letter, the attorney at Los Angeles called up the same telephone number, and a woman answering the call stated that Hewitt lived there, but was out of town for about two weeks. At the time of this telephone call, the widow of the deceased was absent in the East, returning to Los Angeles about a week later. During her absence a friend cared for the property, but who answered the telephone call

does not appear, nor does it appear that either of the appellees was in any wise responsible for the information given. The appellant first learned of the death of Hewitt in June, 1925. In the meantime letters testamentary had been taken out on his estate, the administration had been closed, and the estate distributed to the widow and daughter as the sole heirs at law. In the petition for letters of administration filed by the widow, and in the petition for distribution of the estate, no reference was made to the fact that the appellant was an heir of the deceased, or that he had ever existed. The widow married Hewitt in 1916, and had been acquainted with him for about a year and a half prior to the marriage.

During his lifetime Hewitt had executed three wills—the first bearing date May 4, 1896; the second September 10, 1897; and the third undated, but executed some time after June 10, 1920. In each of these wills, Hewitt had devised the sum of $10 to the appellant, his adopted son. The widow had seen these wills after the marriage and was familiar with their contents. She questioned Hewitt in reference to the adopted son, and was informed by him that he had such a son, but that he had been given back to his parents, and he had heard that the son was dead. The knowledge thus gained by the widow was not communicated to the attorney who had charge of the settlement of the estate, nor to the court in which the estate was administered. The other appellee, the daughter, had no notice, prior to the distribution of the estate, that the appellant had been adopted by her father, or that any such person existed. Such in brief are the admitted facts, with whatever inferences are properly and legitimately deducible therefrom.

The appellant contends that he was entitled to the relief claimed on two grounds: First, because of fraud on the part of the appellee Elvira A. Hewitt, as administratrix, in concealing facts from the court in the course of the administration of the estate; and, second, because of mistake based on the false or erroneous information received over the telephone after the death of the intestate. The appellees, on the other hand, contend that there was no fraud on the part of the administratrix, but, if fraud existed, it was intrinsic fraud, against which equity will not relieve; and, second, that there was no mistake, but, if a mistake, it was not unmixed with negligence on the part of the appellant and his agents.

[1, 2] It is well settled that a court of the United States, in the exercise of its equity powers and where diversity of citizenship gives jurisdiction over the parties, may deprive a party of the benefit of a judgment or decree fraudulently obtained in a state court, as the decree of the federal court operates on the parties, and not on the state court. Marshall v. Holmes, 141 U. S. 589, 12 S. Ct. 62, 35 L. Ed. 870. Was there, then, such fraud in this case as will warrant the interposition of a court of equity? No doubt, where litigants are dealing at arms' length, they are under no obligation to disclose to their adversaries the weakness of their cause of action or defense; but this rule has little or no application where a fiduciary relation exists between the parties, and that such relationship does exist between an administratrix and the heirs of the estate is well settled. Diamond v. Connolly (C. C. A.) 251 F 234; same case (C. C. A.) 276 F. 87.

[3] Here, by reason of the trust and confidential relation existing between the parties, a positive duty rested on the administratrix to fully advise the court as to all facts and all information in her possession concerning the heirs of the decedent and their whereabouts. This duty she wholly failed to discharge, and the reason for her failure cannot be accepted. She knew that her husband had an adopted son, and the only knowledge or information she had as to his death was the bare statement of her husband that it had been so reported to him, but where, when, or by whom she was not advised. Furthermore, she knew that her husband had made provision for the adopted son by will as late as June 1920, thus indicating that he himself did not give full credence to the report of his death. She made no inquiry for the adopted son, at his last known place of address or elsewhere, and maintained silence solely because of the hearsay statement made to her by her husband some years before. Had she communicated all of these facts to the court, it is not at all likely that a decree of distribution would have been entered without directing further investigation or inquiry—at least we have a right to so presume. Nor will we speculate as to what might have happened, had she pursued the proper course.

But it is said that, if her mere silence constituted fraud, it was intrinsic fraud, against which a court of equity is powerless to grant relief, and United States v. Throckmorton, 98 U. S. 61, 25 L. Ed. 93, is cited. In that case, the claimant of a Mexican land grant presented to the board of commissioners of private land claims in California, and to the District Court of the United States, a grant

from a former political chief of California, which was falsely and fraudulently antedated, so as to impose on the commissioners and the court the belief that it was made at a time when that officer had power to make such grants in California. The grant was confirmed by the board of commissioners and by decree of the District Court. Some 20 years later the United States sought to annul the decree because of the use made of this false or forged document before the commissioners and before the District Court. A decree dismissing the bill of complaint was affirmed, and in the course of the opinion the Supreme Court said:

"On the other hand, the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed."

But in the same connection it was further said:

"But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practised on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side—these, and similar cases, which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing."

This case, we think, falls within the exception, and not within the general rule. Here the appellant was prevented from presenting a claim for his portion of the estate by the fraudulent conduct of the administratrix, and there has been no adversary trial or decision of any issue as between the parties to the present suit. The appellees frankly concede that, if the appellant had been prevented from making claim to the estate because of some fraudulent statement or misrepresentation on the part of the administratrix, a court of equity would readily grant

relief; but it is contended that mere silence on her part presents an entirely different question. But there can be no sound distinction between the giving of false information and the failure to give correct information, where the giving of the latter is a matter of legal duty. As said by the court in Laun v. Kipp, 155 Wis. 347, 367, 145 N. W. 183, 190 (5 L. R. A. 655):

"There is no written law placing a limit upon the power of equity to remedy and redress wrongs, neither is there any want of power in that regard in the written law. It is the crowning merit of our system that, so far as power is concerned, it is as limitless as the capacity of man to wrong a fellow man. Courts may well proceed with great care in exercising their supreme authority outside of the field of ordinary judicial activity, but should never doubt or suggest want of power to deal with any situation where otherwise one person would be seriously injured by another in his person or property. The judicial arm of the people stands for its whole sovereign authority in that field, and so, in the very nature of things, must, in the final analysis, be limited only by the boundaries of justice and be taken as infallible as regards what is just under all the circumstances of any particular situation."

Again the court said:

"It is not a case where one may by mere silence permit a judgment to go in his favor, which is unjust. In ordinary situations one may, legally if not morally, keep silent and profit by his adversary's ignorance. That is neither fraud, intrinsic, as in case of perjury, nor fraud, extrinsic, within the Throckmorton rule. But where there is a solemn duty to speak, independently of coercion, and in a judicial controversy as well, whether asked to speak or not, and there is a failure to speak, resulting in the enrichment of the wrongdoer and the impoverishment of the one to whom that duty is owing, there is a fraud of most serious nature and, in a sense, both intrinsic and extrinsic. That view was taken of the early rule and as a modification, if need be, of the Throckmorton exposition of it in Maddox v. Apperson, 14 Lea (82 Tenn.) 596. The court there said that if the term 'extrinsic fraud' as distinguished from 'intrinsic fraud' would bar relief where a judgment is obtained by suppressing evidence which the prevailing party is bound to disclose by reason of his relation to the adverse party, as in case of the existence of fiduciary relations, the court would not go that far."

These views are fully supported by the

decisions of this court in Diamond v. Connolly, supra, where the facts were, if anything, more favorable to the contention of the distributees than is the case here, because it was not claimed or contended that the administrator in that case had any knowledge of the existence of the particular heirs to whom the property was finally awarded by this court.

Having reached the conclusion that the decree of distribution was fraudulently obtained, it becomes unnecessary to consider the question of mistake, further than to suggest that perhaps undue reliance was placed upon a telephone conversation with an unknown person.

The decree of the court below is reversed, with directions to enter a decree in favor of the appellant in accordance herewith.