Phillip C. PEPPER, an Arizona resident, et al., Plaintiffs and Appellants,

v.

ZIONS FIRST NATIONAL BANK, N.A., et al., Defendants, Counter-claimants, and Appellees.

ZIONS FIRST NATIONAL BANK, N.A., et al., Third–Party Plaintiffs,

v.

Fred M. ROSENTHAL, et al., Third–Party Defendants.

Nos. 20807, 20958.

Supreme Court of Utah.

Nov. 9, 1990.

Rehearing Denied in No. 20807 Nov. 28, 1990.

Irving H. Biele, Edward S. Sweeney, J. Peter Mulhern, Salt Lake City, for plaintiffs and appellants.

Gary R. Howe, Charles M. Bennett, Sheryl L. Simpson, Salt Lake City, for defendants, counter-claimants, and appellees.

Bernard L. Rose, Salt Lake City, for third-party defendant.

STEWART, Justice:

Phillip C. Pepper and other members of the Pepper family ("the Peppers"), the beneficiaries of the Jerome B. Pepper trust, filed this action against Zions First National Bank as the executor of the Jerome B. Pepper estate and as the trustee of the Jerome B. Pepper inter vivos trust. The trust is the sole beneficiary of the estate, and Jerome B. Pepper's wife and children, the appellants here, are the beneficiaries of

the trust. The Peppers appeal from an adverse summary judgment on counts I and II of their five-count second amended complaint. Count I of the complaint alleged that Zions, as the executor of the estate, was guilty of fraud, mismanagement, and self-dealing, which caused a dissipation of the assets of the estate. Count II of the complaint alleged that Zions, as trustee, failed to charge Zions as executor with breach of its fiduciary duty as executor in failing to transfer to the trustee the assets of the estate undiminished by Zions' alleged unlawful acts as executor.

Zions filed a protective, or conditional, cross-appeal from a summary judgment dismissing Zions' third-party indemnification claim against Fred M. Rosenthal, who had managed the Pepper family businesses for and on behalf of Zions as executor. The trial court dismissed the above claims and certified that there was no just reason for delay and entered a final order pursuant to Rule 54(b) of the Utah Rules of Civil Procedure.

## I. FACTS

On April 15, 1975, Jerome B. Pepper executed the Jerome B. Pepper inter vivos trust, which named Zions as the trustee, for the benefit of his wife and children. After he died in 1976, Zions was appointed the executor of his estate, and in that capacity, Zions obtained the probate court's approval to continue the ordinary operations of the Pepper family businesses. Zions also obtained court approval to appoint Fred M. Rosenthal to manage several businesses that Pepper had owned. Rosenthal served as general manager of the Pepper businesses for the estate from February, 1976, to December, 1980.

In December, 1978, Pamco, one of the estate's businesses, made application to Zions Bank to increase its line of credit with the bank to obtain additional working capital and to pay $250,000 in estate taxes. The net worth of the Jerome B. Pepper estate at about that time was represented to be $2,119,468. The net worth of the estate in December, 1979, increased to $2,555,248. In February, 1981, the line of credit with Zions reached a high of $930,000. A few months later, Zions, as executor, filed a final accounting that showed a negative net worth for the estate.

In July, 1981, Zions filed a petition with the probate court for approval of its first and final accounting, the only formal accounting Zions filed. Zions also sought an order that approved Zions' administration of the estate, closed the estate, and discharged Zions. In addition, the petition sought judicial approval of Zions' transfer of the estate's interest in the Lerner–Pepper joint venture, a Pepper estate asset, to the Pepper trust for sale to Hugh Neu Steel Products, Inc., for $1,000,000 and the subsequent use of a portion of those proceeds to purchase a debt from Kennecott Metals for $225,019.36, which was owned by Pamco, a Pepper business, and a debt from Teledyne National for $24,356.22. No mention was made in the petition to the probate court of using the proceeds of the sale to pay off the security interest that Zions, as a commercial bank, had securing its line of credit. The Peppers allege, inter alia, that defendant Zions, as trustee of the Jerome B. Pepper inter vivos trust, had represented to the plaintiffs that the sale of the interest in the Jerome B. Pepper joint venture was to benefit the beneficiaries, when in fact the sale was to protect the defendant's commercial line of credit which the defendant had increased to approximately $930,000.

As executor, Zions mailed to the Pepper family members written notice of Zions' petition for closure of the estate and for court approval of the sale of the Lerner–Pepper joint venture interest. The notice stated that the estate's liabilities exceeded its assets. The Peppers did not appear at the hearing, and on October 8, 1981, the probate court entered a decree that approved the estate's first and final accounting and closed the estate. The closing order approved the executor's transfer of the assets to the trustee, the trustee's sale of the Lerner–Pepper joint venture interest to Hugh Neu Steel Co., and Zions' subsequent payment of the debts of Pepper's Allied Metals. The final accounting showed that

as of September 22, 1981, the estate had only liabilities and no assets to pass on to the Jerome B. Pepper inter vivos trust.

On July 1, 1982, the Peppers filed a motion in the probate court to set aside the closing order under Rule 60(b)(7) of the Utah Rules of Civil Procedure on the ground that there was excusable neglect in failing to appear to oppose the closing order. Before the probate court ruled on that motion, the Peppers filed an amended complaint in the district court against Zions, alleging fraud and misrepresentation. Thereafter, the probate court denied the Peppers' Rule 60(b)(7) motion to vacate the closing order on the ground that the motion was untimely. The Peppers appealed the denial of the motion, and this Court affirmed. *In re Estate of Pepper*, 711 P.2d 261 (Utah 1985).

Again, the Peppers amended their complaint in the district court, this time alleging five claims for relief. The first claim for relief alleged fraud and misrepresentation against Zions as executor. The complaint alleges, inter alia:

> The misrepresentations made by the Defendant were made with the intent that the Plaintiffs rely upon said misrepresentations for the purpose of inducing the Plaintiffs to acquiesce to the continuance of the operations of the various companies in the control of Defendant Zions while Personal Representative.

> The misrepresentations made by the Defendant were made with the intent that the Plaintiffs rely upon such misrepresentations with the purpose of continuing non-profitable businesses in order to protect the commercial line of credit with Defendant Zions Sugarhouse Branch, which the Defendant had allowed to increase to as high as $930,000.

The second claim for relief alleged that Zions breached its fiduciary duty in failing to object to the entry of the order closing the estate. The third and fourth claims alleged negligence and breach of fiduciary duty by Zions as trustee of the Fannie N. Pepper inter vivos trust and the Jerome B. Pepper irrevocable trust. The fifth claim sought punitive damages for the misconduct alleged in the first four claims for relief.

Zions filed a third-party complaint against Fred M. Rosenthal and several other third-party defendants, alleging that if Zions were held liable to the Peppers, the third-party defendants were liable to indemnify Zions for any dissipation of assets caused by mismanagement of the businesses by Rosenthal and the other defendants. Zions also specifically alleged misrepresentation and breach of contract against Rosenthal and the other third-party defendants. Zions stipulated that it had no claim against Rosenthal arising from the Peppers' third, fourth, and fifth claims for relief, except to the extent that the fifth claim alleged punitive damages based on the Peppers' first and second claims for relief.

Zions moved for summary judgment on the fraud claim against it as executor under the first claim for relief and on the claim against it as trustee for failure to object to the executor's final accounting under the second claim for relief. Zions asserted that both claims were barred by res judicata. The trial court granted summary judgment on both claims. Rosenthal also moved for summary judgment against Zions on the ground that Zions' claims against him derived from the Peppers' first and second claims for relief. Zions argued that its claims against Rosenthal should be dismissed only if Zions' motion for partial summary judgment against the Peppers were granted. The trial court granted summary judgment to Rosenthal independent of the court's rulings against the Peppers and for Zions.

On this appeal, the Peppers argue that the trial court erred in ruling that the estate closing order was res judicata as to (1) the Peppers' fraud claim against Zions as executor of the estate, and (2) their claim against Zions as trustee for failing to object to the entry of the closing order. On its cross-appeal, Zions contends that if its partial summary judgment against the Peppers is reversed, Zions is entitled to indemnification from Rosenthal and that the summary judgment in favor of Rosen-

thal and against Zions on the cross-claim should be reversed.

## II. FIRST CLAIM FOR RELIEF—FRAUD

Zions asserts, and the trial court held, that the estate closing order was res judicata and precluded the Peppers' fraud claim against Zions in its capacity as executor.

■ A court order approving a final accounting and settlement of an estate is a decree that closes the estate and discharges the executor. Utah Code Ann. § 75–3–1001(1) (1978). The order binds all persons interested who are given proper notice of the final proceeding as to all matters properly the subject of the accounting. *In re Rice's Estate*, 111 Utah 428, 440–41, 182 P.2d 111, 117 (1947); *accord Miller v. Walker Bank & Trust Co.*, 17 Utah 2d 88, 89–90, 404 P.2d 675, 676 (1965); *In re Raleigh's Estate*, 48 Utah 128, 133–34, 158 P. 705, 707 (1916); 4 J. Henderson, *Bancroft's Probate Practice*, § 1011 (2d ed. 1950).

■ Final judgments and decrees generally may be collaterally attacked, however, if obtained by fraud. *St. Pierre v. Edmonds*, 645 P.2d 615, 618 (Utah 1982). Estate closing orders, like other decrees, may be assailed in equity and upon the same grounds as other judgments. *In re Raleigh's Estate*, 48 Utah at 137, 158 P. at 709. *See also In re Estate of Pepper*, 711 P.2d 261, 262–63 (Utah 1985). This Court has held on a number of occasions that a collateral attack on a decree closing an estate and approving the final accounting may be based on fraud or misrepresentation. *Miller*, 17 Utah 2d at 89–90, 404 P.2d at 676; *In re Rice's Estate*, 111 Utah at 440–41, 182 P.2d at 117; *In re Raleigh's Estate*, 48 Utah at 137, 158 P. at 709; Utah Code Ann. § 75–1–106 (1978).

But not every claim of fraud or misrepresentation provides a basis for a collateral attack against a judgment or decree. A number of older cases state the test to be whether the fraud was "extrinsic" or "intrinsic" and hold that if extrinsic, the fraud is actionable in a collateral attack, but if

intrinsic, it is not actionable. The distinction between extrinsic and intrinsic fraud has often turned on a rather formal and artificial analysis dependent largely on the particular label that is attached to the fraud. *See St. Pierre v. Edmonds*, 645 P.2d at 618–19. Because of widespread dissatisfaction with the distinction, we reassessed the law and held in *St. Pierre* that the fraud alleged need only affect the basic fairness of the adjudication.

■ Our trust and estate cases have essentially employed that test, even before our ruling in *St. Pierre*, although they have sometimes couched the conclusion in the old intrinsic-extrinsic language. See, for example, *In re Rice's Estate*, 111 Utah at 442, 182 P.2d at 118, in which this Court defined extrinsic fraud to mean fraudulent acts that prevent the fair submission of a case for adjudication. *See also Auerbach v. Samuels*, 10 Utah 2d 152, 155–56, 349 P.2d 1112, 1114 (1960). Thus, to allege an actionable fraud on a collateral attack, a plaintiff in a probate case must allege that an executor "was guilty of misrepresentation or concealment in presenting his account or in obtaining the approval of the court." Restatement (Second) of Trusts, § 220, comment a (1959).

An executor's failure to disclose pertinent facts to those who take under a will may constitute the kind of fraud that is actionable in a collateral attack. *Hewitt v. Hewitt*, 17 F.2d 716, 717 (9th Cir.1927), stated the general rule that "mere silence" of an executor in not disclosing important facts to the heirs was the type of fraud against which a court generally was powerless to grant relief, but held that there is an exception to that rule:

"But there is an admitted exception to this general rule in cases where, by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case. Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant

never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side—these, and similar cases, which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing."

This case, we think, falls within the exception, and not within the general rule. Here the appellant was prevented from presenting a claim for his portion of the estate by the fraudulent conduct of the administratrix, and there has been no adversary trial or decision of any issue as between the parties to the present suit. The appellees frankly concede that, if the appellant had been prevented from making claim to the estate because of some fraudulent statement or misrepresentation on the part of the administratrix, a court of equity would readily grant relief; but it is contended that mere silence on her part presents an entirely different question. But there can be no sound distinction between the giving of false information and the failure to give correct information, where the giving of the latter is a matter of legal duty.

17 F.2d at 718 (quoting *United States v. Throckmorton*, 98 U.S. 61, 65–66, 25 L.Ed. 93 (1878)). *Accord, Pickens v. Merriam*, 242 F. 363 (9th Cir.1917); *Jose v. Lyman*, 316 Mass. 271, 55 N.E.2d 433 (1944); *In re Enger's Will*, 225 Minn. 229, 30 N.W.2d 694 (1948); 31 Am.Jur.2d *Executors and Administrators* § 1001 (1989).

The fraud the Peppers allege against Zions as executor is that Zions misrepresented the value of the Pepper estate "in the form of quarterly reports prepared by Defendants Zions and forwarded to the Plaintiffs which showed misleading values of the Jerome B. Pepper estate and companies within the estate" and other information conveyed "directly to the plaintiff by written correspondence and conversations which gave misleading information as to the value of the estate." The Peppers do not claim that Zions misrepresented the value of the estate in the final accounting; indeed, the Peppers' complaint is based on the loss in the value of the estate, as reflected in the final accounting. A fair inference from the Peppers' allegations is that Zions lulled the Peppers into a false sense of security as to the proper management and value of the estate, with the consequence that they did not act with sufficient promptness to object formally to the closing order. *See Goldberg v. Goldberg*, 217 Cal.App.2d 623, 32 Cal.Rptr. 93 (1963).

In effect, the Peppers allege that they were thus prevented from litigating the question whether Zions mismanaged several of the major assets of the estate, i.e., the Lerner–Pepper joint venture interest, the businesses of Pamco and Pasco (Pepper estate businesses), and managed in such a manner as to promote Zions' self-interest as a commercial bank by insuring payment of Zions' line of credit rather than making business decisions solely for the benefit of the estate. The second amended complaint specifically alleges that the Pepper businesses obtained working capital, at least in part, from the commercial line of credit obtained from Zions in the name of Pamco which reached approximately $350,000 at the time of Pepper's death. The complaint further alleges, inter alia, that after Pepper's death, Pasco and Pamco, through Rosenthal, obtained from Zions an increase in the line of credit to $750,000 and that the line of credit did not benefit the Lerner–Pepper joint venture, even though it was secured by assignments of Lerner–Pepper accounts receivable and inventory.

■ Zions contends that the Peppers are barred as a matter of law from any remedy on the ground that a party who moves to vacate a final order pursuant to Rule 60(b) of the Utah Rules of Civil Procedure, as the Peppers did, may not thereafter attack that same order collaterally in an independent action. According to Zions, a party

may do one or the other, but not both. Zions relies on *Mendenhall v. Kingston*, 610 P.2d 1287 (Utah 1980), for the proposition that if a party to a final judgment moves to set aside the judgment under Rule 60(b) and is unsuccessful, that party may not thereafter collaterally attack the judgment in an independent action. Zions also argues, alternatively, that the October 8 closing order bars all the Peppers' claims against Zions as executor because the closing order has not been vacated.

As noted, the Peppers moved under Rule 60(b)(7) to set aside the closing order on the ground that because the notice given them was insufficient to allow them to appear and to effectively challenge the closing order, that order was invalid because it denied them due process. This Court's opinion in *In re Estate of Pepper*, 711 P.2d 261, 263 (Utah 1985) sets forth precisely the allegation that the Peppers made in the hearing on their Rule 60(b) motion: "Appellants assert that because the notice was mailed to them, out of state, they did not have an adequate opportunity to read the 233–page petition and prepare for the hearing held twelve days after the mailing. They argue that this denial of their due process rights necessitates that the order be set aside." The Court held that the notice was adequate and affirmed the denial of the Rule 60(b) motion. Thus, the Peppers' motion to set aside was based exclusively on procedural grounds.

Zions misreads Rule 60(b) and our case law on res judicata. Rule 60(b) provides that a final judgment or decree may be set aside on seven grounds, some procedural and some substantive.[1] The rule expressly provides that a court also may entertain "an independent action to relieve a party from a judgment, order or proceeding or to set aside a judgment for fraud upon the court. The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action." Thus, despite the doctrine of res judicata, the rule expressly recognizes two different methods for attacking a judgment.

Rule 60(b) does not, however, specify what res judicata effect, if any, the denial of a Rule 60(b) motion has on a subsequent independent action collaterally attacking the same judgment. *Mendenhall v. Kingston*, 610 P.2d 1287, 1289, held, on the facts of that case, that the denial of a Rule 60(b) motion precluded a subsequent independent action because of res judicata. Nevertheless, it does not follow that every denial of a 60(b) motion has a preclusive effect on a subsequently filed independent action.

Rule 60(b) sets forth several grounds for setting aside a judgment by motion that would not be an adequate ground for an independent collateral attack on a judgment. For example, the rule provides that a party may be relieved of a judgment for "excusable neglect" in failing to appear to

1. Utah Rule of Civil Procedure 60(b)(1) through (7) provides:

   **(b) Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.** On motion and upon such terms as are just, the court may in the furtherance of justice relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) when, for any cause, the summons in an action has not been personally served upon the defendant as required by Rule 4(e) and the defendant has failed to appear in said action; (5) the judgment is void; (6) the judgment has

   been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (7) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time and for reasons (1), (2), (3), or (4), not more than 3 months after the judgment, order, or proceeding was entered or taken. A motion under this Subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding or to set aside a judgment for fraud upon the court. The procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

contest the entry of a default judgment. That ground, however, would certainly not justify a collateral attack. There are also other grounds for vacating a judgment under Rule 60(b) that would not sustain an independent collateral attack, and the denial of a 60(b) motion on such grounds could not, under res judicata law, preclude an independent action based on fraud or misrepresentation. Certainly, a denial based on one of the mandatory time limitations in the rule for filing a motion could not have a preclusive effect in a subsequent independent action. To be preclusive, the claim or ground actually adjudicated on the 60(b) motion must be the same claim or ground that is asserted in the independent action. *See, e.g., Penrod v. Nu Creation Creme, Inc.,* 669 P.2d 873 (Utah 1983). To hold otherwise could result in a denial of due process. To the extent that *Mendenhall* endows the denial of a Rule 60(b) motion with greater preclusive effect than that stated above, it is hereby disapproved.

■ The Peppers' Rule 60(b) motion sought to have the October 8 order vacated on the ground that the movants had insufficient time to respond to Zions' petition at the final hearing. The denial of that motion established that the time allowed met constitutional requirements, but that ruling does not bar the Peppers' claims for fraud and misrepresentation alleged in the present independent action against Zions.

In sum, the trial court erred in concluding as a matter of law that the Peppers' claim based on fraud and misrepresentation against Zions as executor was necessarily barred by res judicata. On remand, the plaintiffs must first establish that they were in fact prevented by fraud or misrepresentation from litigating the allegations of mismanagement and self-dealing.

## III. COUNT II—RES JUDICATA EFFECT OF THE CLOSING ORDER ON THE ACTION AGAINST THE TRUSTEE

The Peppers also allege that, as trustee, Zions violated a duty owed them as beneficiaries by failing to enforce the trust's claims against the estate for the executor's mismanagement of its assets prior to their transfer to the trust. The Peppers also allege that Zions had a conflict of interest because of its self-interest in protecting its loan to the Pepper estate businesses and its duty to administer the estate and the trust for the benefit of the Pepper family members as beneficiaries.

Executors and trustees are charged as fiduciaries with one of the highest duties of care and loyalty known in the law. Although Zions acted as both executor and trustee, the duties of each office remained separate and independent from the other and did not merge. Thus, Zions as trustee had a duty to act with the utmost fidelity to protect and preserve the beneficiaries' interests, even though Zions had to challenge its own conduct as executor.

■ The law is settled that a "trustee owes a duty to the beneficiary on taking over property from the executor to examine the property tendered and see whether it is that which he ought to receive." G. Bogert, *Trusts and Trustees,* § 583, at 358–59 (rev'd 2d ed. 1980) (citations omitted). A successor trustee "is liable for breach of trust if he neglects to take proper steps to compel his predecessor to deliver the trust property to him." 3 A. Scott & W. Fratcher, *The Law of Trusts* § 223.2, at 398–99 (4th ed. 1988). A trustee has a duty to enforce claims against an executor as a prior fiduciary upon the transfer of the assets of the estate to the trustee. Restatement (Second) of Trusts § 177, comment a (1959) states:

The trustee is under a duty to the beneficiary to take reasonable steps to enforce any claim which he holds as a trustee against predecessor trustees ... or in the case of a testamentary trust against the executors of the estate, to compel them to transfer to him as trustee property which they are under a duty to transfer, or to redress any breach of duty committed by them.

*See also In re First Nat'l Bank of Mansfield,* 37 Ohio St.2d 60, 307 N.E.2d 23 (1974).

A trustee's duty is not diminished or altered because the trustee was also the executor of the estate that transferred its assets to the trust, even though the executor is absolved from liability for his administration of the estate by a court order. *Dickerson v. Camden Trust Co.*, 1 N.J. 459, 464, 64 A.2d 214, 218 (1949); *In re First National Bank of Mansfield*, 37 Ohio St.2d at 66, 307 N.E.2d at 26–27.

Zions asserts that because the estate's transfer of the Lerner–Pepper partnership assets to the trust and the subsequent sale of those assets as trustee was approved in the October 8 closing order, the doctrine of res judicata now bars the Peppers from attacking that order. That argument, however, fails to meet the thrust of the Peppers' argument. They do not complain of the sale as such; rather, they contend that the executor mismanaged the estate, that the trustee had a duty to charge the executor with the estate's loss of value occasioned by the executor's mismanagement, and that as beneficiaries of the trust they have a claim against the trustee for its failure to enforce the claim against the executor.

■ A beneficiary's claim for relief against a trustee for failure to enforce a trust's claim against a predecessor fiduciary is not barred by res judicata doctrines of collateral estoppel and issue preclusion based on an estate closing order. A claim against a trustee for defaulting on its duty to protect the trust does not constitute a collateral attack on an estate closing order. The Minnesota Supreme Court stated in *In re Irrevocable Inter Vivos Trust Established by R.R. Kemske*, 305 N.W.2d 755, 762 (Minn.1981), "This is not a collateral attack on a probate court order. It is a claim of breach of a trustee's duty to its beneficiaries, not breach of an executor's duty to its legatee."

Zions argues, however, that the estate closing order creates a preclusive bar against the beneficiaries' claim against Zions as trustee because that order adjudicated the lawfulness of the transfer of all the estate's assets to the trustee at closing. In short, Zions contends that the closing order precludes a claim against a trustee for failing to receive the proper assets from the executor when the trustee and the executor are the same person.

■ There is some authority to support Zions' contention that a probate decree is res judicata as to both the executor and a successor trustee. *Carr v. Bank of America Nat'l Trust & Savings Assoc.*, 11 Cal.2d 366, 79 P.2d 1096 (1938); *In re Liquidation of Canal Bank & Trust Co.*, 185 La. 34, 168 So. 485 (1936); *Shearman v. Cameron*, 78 N.J.Eq. 532, 80 A. 545 (1911); *In re Menzie's Estate*, 54 Misc. 188, 105 N.Y.S. 925 (1907). *See also In re Chaves' Estate*, 143 Misc. 868, 257 N.Y.S. 641 (1932), *aff'd*, 239 App.Div. 900, 265 N.Y.S. 932 (1933). Nevertheless, we believe that the better view is that if a trustee fails to assert the claims of a trust against an executor who transfers dissipated assets to the trust, those claims are not precluded by a probate order discharging the executor, even though the trustee and the executor are the same entity. A number of cases support that proposition. *See, e.g., In re Estate of Winston*, 99 Ill.App.3d 278, 54 Ill.Dec. 756, 425 N.E.2d 973 (1981); *Bullis v. DuPage Trust Co.*, 72 Ill.App.3d 927, 29 Ill.Dec. 68, 391 N.E.2d 227 (1979); *Liska v. First Nat'l Bank in Sioux City*, 310 N.W.2d 531 (Iowa Ct.App.1981); *In re Irrevocable Inter Vivos Trust Established by R.R. Kemske*, 305 N.W.2d 755 (Minn. 1981); *In re First Nat'l Bank of Mansfield*, 37 Ohio St.2d 60, 307 N.E.2d 23 (1974); *Smith v. McMahon*, 236 Or. 310, 388 P.2d 280 (1964).

That proposition follows from the principle that an entity acting in one capacity is not the "same party" for res judicata purposes as the same entity acting in a different capacity. 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4449, at 414 (1981). The Restatement (Second) of Judgments § 36(2) (1982) states:

A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a

subsequent action in which he appears in another capacity.

On its face, that rule applies to an entity acting in the dual capacity of trustee and executor.

The principle is illustrated by *In re Irrevocable Inter Vivos Trust Established by R.R. Kemske*, 305 N.W.2d 755 (Minn.1981), in which a bank acted as both executor of Rudolph Kemske's estate and the trustee of a trust which was the legatee of part of Kemske's estate. The probate court approved a final decree of distribution more than two years before a suit was filed against the bank alleging mismanagement of the funds. The Minnesota Supreme Court rejected the argument that the probate court's approval of the executor's final accounting conclusively established that there was no basis for the trustee to have objected to that accounting:

> This is not a collateral attack on a probate court order. It is a claim of breach of a trustee's duty to its beneficiaries, not breach of an executor's duty to its legatee.
>
> . . . .
>
> . . . The fact that a bank serves in a dual capacity, and as trustee may have to question its own conduct as executor, does not alter the trustee's duty to its beneficiaries.
>
> . . . .
>
> . . . At the hearing on the final account, the trustee—acting for the trust beneficiaries—owed the beneficiaries a duty to use reasonable care and diligence in examining that accounting and objecting thereto if reasonable and prudent to do so. . . . [I]t was error not to have permitted appellants . . . to introduce evidence of the executor's performance as bearing on the trustee's duty of care.

305 N.W.2d at 762–63.

*In re First National Bank of Mansfield*, 37 Ohio St.2d 60, 307 N.E.2d 23 (1974), is similar. There, the defendant bank was the executor of an estate and trustee of a testamentary trust created to receive the assets of the estate. The executor overpaid more than $5,000 in inheritance taxes. Five years after the probate court had ap-

proved a final accounting, the trust beneficiary sued the bank in its capacity as trustee for the overpayment. The Supreme Court of Ohio held that the failure of the beneficiary to "file exceptions to the final account of the executor does not preclude her from filing exceptions to the [bank's] account in its capacity as trustee." 37 Ohio St.2d at 66, 307 N.E.2d at 27. Furthermore, the court held that the bank, as trustee, was under an "unqualified duty" to "take action to recover . . . that portion of the trust property which had been wrongfully disbursed by the bank while acting as executor." 37 Ohio St.2d at 66, 307 N.E.2d at 27.

Likewise, in *In re Estate of Winston*, 99 Ill.App.3d 278, 54 Ill.Dec. 756, 425 N.E.2d 973 (1981), a decedent's widow served as both administratrix of his estate and trustee of a trust which was to receive certain assets under his will. More than seven years after the court approved the widow's final account as administratrix, one of the beneficiaries of the trust sued, alleging that she had converted assets in her husband's estate that should have been placed in the trust. The appellate court rejected the argument that the order approving the widow's final accounting as administratrix barred the suit:

> As trustee, she had a duty to assure that any assets rightfully belonging to the trust became part of the trust. . . . As trustee, it was incumbent upon her to challenge the final account if she knew or should have known that [certain stock she retained] constituted part of the residue of [the] estate and thus part of the trust. [She] cannot now assert the binding effect of the order approving the final account obtained . . . in her capacity as administratrix to escape accountability for . . . breach of her fiduciary duty as trustee in failing to challenge the final account. . . .

99 Ill.App.3d at 287, 54 Ill.Dec. at 763–64, 425 N.E.2d at 980–81 (citations omitted).

The policy that underlies the rule we adopt gives full effect to the trust principle that a "trustee owes a duty to the beneficiary on taking over the property from the

executor to examine the property tendered and see whether it is that which he ought to receive." G. Bogert, *Trusts and Trustees*, § 583, at 359 (rev'd 2d. ed. 1980). That duty should not be diluted on a theory that the duties of an executor and trustee are merged for res judicata purposes when one party acts in both capacities. There is no sound reason to diminish the protection the law affords beneficiaries who rely on fiduciaries for their protection.

Furthermore, a straight forward application of res judicata principles under standard law compels the same conclusion. The grounds alleged in the complaint here were not actually litigated in the probate proceeding and therefore cannot collaterally estop the beneficiaries against the trustee. *See Penrod v. Nu Creation Creme, Inc.*, 669 P.2d 873 (Utah 1983).

■ Zions also contends that Utah Code Ann. § 75-7-306(6) (1978) absolves it from liability as trustee on the ground that as executor, it was solely responsible for the loss of value. That section limits a trustee's liability "for failure to take necessary steps to compel the redress of any breach of trust or fiduciary duty by any predecessor executor, trustee, or other fiduciary" to those acts of the predecessor of which the trustee has "actual knowledge or information which would cause a reasonable trustee to inquire further...."

Because Zions acted in a dual capacity as trustee, it clearly was aware of any breach of duty it may have committed as executor of Pepper's estate. The knowledge that Zions had as executor, it also necessarily had as trustee. Section 75-7-306(6) does not absolve a trustee who has knowledge of the unlawful conduct of a predecessor executor. The statute avails Zions nothing.

■ The October 8, 1981 decree approving the trust transaction did not, therefore, have any res judicata effect upon plaintiffs' claim against Zions as trustee. The issue of the trustee's liability was not actually litigated in an adversarial proceeding, but was decided in a default proceeding. It follows that plaintiffs' claim against Zions as trustee is not precluded.

The partial summary judgment against the Peppers on their claim against Zions as trustee is reversed.

## IV. ZIONS' CROSS-APPEAL OF THIRD-PARTY CLAIM

In light of the foregoing, we now consider the propriety of the trial court's summary judgment in favor of Rosenthal on Zions' third-party claims against him.

Zions' first cause of action against Rosenthal asserts that he made material representations which were imputed to Zions as acts of fraud and misrepresentation and that he should be held liable to Zions for those acts for which Zions might be found liable to the Peppers.

Zions' second claim for relief alleges that Rosenthal was negligent in the performance of his duties in managing the various Pepper companies held by the estate. Zions' final cause of action is based on breach of contract. It asserts that Rosenthal's breach was the proximate cause of the diminution of the estate of Jerome B. Pepper. Zions has stipulated that it has no claims against third parties arising from the Peppers' third and fourth causes of action.

Zions seeks indemnification from Rosenthal on the theory, apparently, that he was primarily liable for whatever injury was done to the estate, if any, and that Zions was only derivatively liable. The allegations in the Peppers' complaint against Zions are far from rifle shot allegations. Conceivably, the Peppers might be able to prove several different theories, some of which might give Zions a third-party claim against Rosenthal and some of which might not. Under these circumstances, it is premature to rule that Zions has no claim. We, therefore, reverse the summary judgment against Zions. We observe, however, that Rosenthal may, when the case is more clearly outlined, seek an order of dismissal or summary judgment.

Reversed and remanded for further proceedings.

HALL, C.J., DURHAM, J., and GARFF, Court of Appeals Judge, concur.

HOWE, J., concurs in the result.

ZIMMERMAN, J., having disqualified himself, did not participate herein; GARFF, Court of Appeals Judge, sat.